

# THE ATTORNEY GENERAL
## OF TEXAS

May 19, 1988

M MATTOX
ATTORNEY GENERAL

G.V. Brindley, Jr., M.D.            Opinion No. JM-906
Executive Director
Texas State Board of               Re:   Whether rules of the Board
   Medical Examiners               of Medical Examiners authorizing
P. O. Box 13562                    closed administrative sanction
Austin, Texas    78711             proceedings in disciplinary mat-
                                           ters are valid following amend-
                                           ments to the Medical Practice
                                           Act (RQ-1254)

Dear Dr. Brindley:

You ask several questions about the effect of recent amendments to the Medical Practice Act, article 4495b, V.T.C.S., on the powers and duties of the Board of Medical Examiners in disciplining its licensees. You first inquire whether the board may continue to hear complaints against licensees in "administrative sanction" hearings which are informal, closed hearings as described by board rules. Bd. of Medical Examiners, 22 T.A.C. §195 (1980), as amended by 11 Tex. Reg. 4852 (1986). We limit our discussion to the question asked, and do not address all issues raised by administrative sanction hearings.

The board has authority to make rules not inconsistent with the Medical Practice Act as necessary to govern its own proceedings, perform its duties, regulate the practice of medicine and enforce the act. V.T.C.S. art. 4495b, §2.09(a). The board may cancel, revoke, or suspend the license of a practitioner of medicine or impose any other authorized means of discipline if it finds he has practiced fraud or deception in taking an examination, has used alcohol and drugs to the extent of endangering the lives of patients, used a false, misleading, or deceptive statement in advertising, violated valid rules issued by the board, or engaged in any other conduct set out in section 3.08 of article 4495a, V.T.C.S. Id. §§3.08, 4.01, 4.05, 4.12.

Pursuant to its rule-making authority the board adopted rules authorizing an "administrative sanction" procedure to deal with violations of the Medical Practice Act or board rules in cases where the director of the investigation

division and the secretary or chief executive officer of the board concur that the violation is either minor in nature or subject to proper resolution by voluntary limitation of the licensee's authority to practice medicine. 22 T.A.C. §195.1. The rules provide for an informal hearing before a hearings officer and one or more representatives of the board or members of a district review committee. 22 T.A.C. §195.3(1), (2). At the conclusion of the hearing, the hearings officer and board representatives make findings of fact and conclusions of law and recommend measures to resolve or correct the matter which violates the Medical Practice Act. Recommendations may include, for example, limitations or cancellation of the physician's license, limitation or cancellation of his authority to possess and prescribe drugs, or the requirement that he have counseling or treatment. 22 T.A.C. §195.3(8). If the licensee rejects the recommendations, the matter is referred to the Investigation Division "for appropriate action." 22 T.A.C. §195.3(8), (9). If the licensee voluntarily accepts the recommendations, he signs letters, agreements, affidavits, or other documents as necessary to effectuate his voluntary acceptance of the recommended disciplinary measures. Id. at §195.3(10). The regulations further provide that the secretary or chief executive officer of the board and ultimately the board itself is to approve or disapprove the recommendations of the hearings officer and the restrictions to which the licensee voluntarily agrees. If the board does not approve the administrative sanction action, the matter is referred to the investigation division for filing of a formal complaint for disciplinary action, or other appropriate action. 22 T.A.C. §§195.3(10), (11); 195.4. The rules provide that the results of the hearing and any letter, agreement, or affidavit are open records. Bd. of Medical Examiners 11 Tex. Reg. 4852 (1986) (amending 22 T.A.C. §§195.3(12), 195.4(3)).

You state that the administrative sanction rules were based primarily on the board's authority under former law to administer a private reprimand. Before it was amended by the 70th Session of the Legislature, section 4.12 of the Medical Practice Act provided as follows:

> Sec. 4.12 Except as otherwise provided in Section 4.01 [pertaining to felony convictions under the Controlled Substances Act], if the board finds any person to have committed any of the acts set forth in Section 3.08 of this Act, it may enter an order imposing one or more of the following:

(1) deny the person's application for a license or other authorization to practice medicine;

(2) <u>administer a public or private reprimand</u>;

(3) suspend, limit, or restrict the person's license or other authorization to practice medicine, including limiting the practice of the person to or by the exclusion of one or more specified activities of medicine;

(4) revoke the person's license or other authorization to practice medicine;

(5) require the person to submit to care, counseling, or treatment of physicians designated by the board as a condition for the initial, continued, or renewal of a license or other authorization to practice medicine;

(6) require the person to participate in a program of education or counseling prescribed by the board;

(7) require the person to practice under the direction of a physician designated by the board for a specified period of time; or

(8) require the person to perform public service considered appropriate by the board. (Emphasis added.)

Acts 1981, 67th Leg., 1st C.S., ch. 1, §4.12, at 25.

House Bill No. 2560 of the 70th Legislature made the following relevant changes in section 4.12:

Sec. 4.12 (a) Except as otherwise provided in Section 4.01, if the board finds any person to have committed any of the acts set forth in Section 3.08 of this Act, it <u>shall</u> enter an order imposing one or more of the following:

. . . .

> (2) <u>administer a public reprimand</u>. . . .
> (Emphasis added.)

Acts 1987, 70th Leg., ch. 596, §11, at 4661, codified as V.T.C.S. art. 4495b, §4.12.

The board no longer has authority to administer a private reprimand. Moreover, prior to the amendment in 1987, section 4.12 stated that the board "may enter an order" imposing one or more of several disciplinary measures if it found that any person had committed one of the acts set forth in section 3.08. Thus, the board formerly had discretion to not issue an order when it made the requisite finding. <u>See generally</u> <u>District Grand Lodge No. 25 v. Jones</u>, 160 S.W.2d 915 (Tex. 1942) ("may" ordinarily connotes permission). Section 4.12 now provides that the board "shall enter an order" if it makes such a finding. Thus, the board has no discretion to withhold a formal order when it has found wrongdoing. <u>See</u> <u>Hess & Skinner Engineering Co. v. Turney</u>, 203 S.W. 593 (Tex. 1918) (word "shall" is ordinarily a preemptory term); <u>McLaren v. State</u>, 199 S.W. 811 (Tex. Crim. App. 1917) ("shall" is ordinarily imperative and not directory). Under section 4.12 as amended, once the board finds that a person has engaged in conduct set out in section 3.08, it has a mandatory duty to enter an order imposing one or more of the section 4.12 disciplinary measures.

House Bill No. 2560 also added the following language to section 4.04 of article 4495b, V.T.C.S.:

> The board may, unless precluded by the law or this Act, make a disposition of any complaint or matter relating to this Act, or of any contested case by stipulation, agreed settlement, or consent order. The board shall adopt such rules as are appropriate to carry out such disposition. <u>Such disposition shall be considered a disciplinary order</u>. (Emphasis added.)

V.T.C.S. art. 4495b, §4.04(b). Thus, these other means of dealing with a complaint or contested case are now to be considered disciplinary orders.

Rules authorizing administrative sanction hearings which were based on the board's former authority to issue orders administering a private reprimand, and those which were based on its former authority to issue no order at all after a finding of misconduct, are no longer consistent with

the amended statute and are invalid. The board may make "rules, regulations, and bylaws not inconsistent" with article 4495b, as necessary for the performance of its duties. V.T.C.S. art. 4495b, §2.09(a). Essential elements of the administrative sanction procedure are inconsistent with the amended provisions of sections 4.04(b) and 4.12 of article 4495, V.T.C.S., and are therefore invalid. An administrative agency has only those powers expressly or impliedly delegated to it by the legislature, and the legislature may withdraw from an administrative agency any of the powers delegated. State v. Jackson, 376 S.W.2d 341 (Tex. 1964). Section 4.05 of article 4495, V.T.C.S., sets out the hearing procedures which the board may use in disciplinary matters:

> Sec. 4.05 (a) The president of the board shall designate one of the following alternative procedures for the conduct of each individual contested case in a disciplinary matter:

> (1) a hearing before the board itself where a quorum of the board shall be present for the hearing and decision at the conclusion of the hearing;

> (2) a hearing committee appointed by the president of the board, provided that the hearing committee shall be composed of not less than three members of the board and the composition of such committee shall be consistent with the provisions of Sections 2.08 and 2.09 of this Act; or

> (3) a hearing before a hearing examiner appointed by the board to conduct a hearing and to prepare and submit to the board for action a proposal for decision as provided in the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

V.T.C.S. art. 4495b, §4.05.

Your second and third questions are contingent on a determination that the board has present authority to conduct administrative sanction hearings. In view of our answer to your first question, we need not answer them.

You next ask for an interpretation of section 2.09(p) of the Medical Practice Act, as amended by the 70th Legislature. It provides as follows:

> (p) The board shall disseminate at least twice a year and at other times determined necessary by the board information as is of significant interest to the physicians in Texas. <u>The information must include summaries of disciplinary orders made against physicians licensed in this state</u>, board activities and functions, pertinent changes in this Act or board rules and regulations, and attorney general opinions. The requirements of this section are in addition to the reporting requirements imposed under Section 4.14 of this Act. The board shall disseminate the information:
>
> (1) to all licensed physicians practicing in this state;
>
> (2) to all health-care entities and other board-designated health-care institutions operating in this state;
>
> (3) to all members of health-related legislative committees;
>
> (4) on written request, to members of the general public; and
>
> (5) to public libraries throughout the state. (Emphasis added.)

V.T.C.S. art. 4495b, §2.09(p). Before it was amended, section 2.09(p) only required the distribution of information of significant interest to Texas physicians, including board activities, changes in the Medical Practice Act or rules and regulations thereunder, and attorney general opinions. It did not require the dissemination of disciplinary orders.

You ask whether section 2.09(p) as amended requires the board to disseminate summaries of administrative sanctions which involve disciplinary actions or practice restrictions voluntarily agreed to by the licensee, but for which no formal board order has been entered. Section 2.09(p) requires the board to disseminate summaries of "disciplinary orders" against licensed physicians.

Article 4495b, V.T.C.S., does not define "disciplinary orders" but the meaning of this term can be determined by looking at sections of the statute on disciplinary proceedings. Section 4.01(a) of article 4495b, V.T.C.S., states as follows:

> Sec. 4.01 (a) Except as provided herein, the board may cancel, revoke, or suspend the license of any practitioner of medicine or <u>impose any other authorized means of discipline</u> upon proof of the violation of this Act in any respect or for any cause for which the board is authorized to refuse to admit persons to its examination and to issue a license and renewal license, including an initial conviction or the initial finding of the trier of fact of guilt of a felony or misdemeanor involving moral turpitude. (Emphasis added.)

V.T.C.S. art. 4495b, §4.01(a). The exceptions set out in section 4.01(b) and 4.01(c) relate to mandatory license suspensions and revocations in cases where a licensee is convicted of a felony or incarcerated in a state or federal penitentiary. Section 4.04(b) of article 4495b, V.T.C.S., provides that the board's disposition of "any complaint or matter relating to this act, or of any contested case by stipulation, agreed settlement, or consent order" shall be considered a disciplinary order. Finally, section 4.12(a) sets out disciplinary measures, one or more of which the board shall order when it finds a violation referred to in section 4.01(a). In our opinion, "disciplinary orders" means the kind of order referred to in sections 4.01(a), 4.04(b), and 4.12(a) of article 4495b, V.T.C.S.

Before the September 1, 1987 effective date of the recent amendments to article 4495b, V.T.C.S., the board was not required to issue a disciplinary order even if it found misconduct. The section 2.09(p) requirement does not apply in cases where the board did not issue a disciplinary order. We reiterate that since September 1, 1987, section 4.12(a) has required the board to issue a disciplinary order once it makes fact findings described by the statute, and section 4.04(b) has treated certain other dispositions as disciplinary orders. We moreover point out that section 2.09(d) requires the board to "preserve a record of its proceedings which shall be a public record." Portions of the board's minutes recording its approval of voluntarily accepted disciplinary measures are therefore public under section 2.09(d), even though the board did not issue a disciplinary

order which would be subject to the section 2.09(p) dissemination requirement. See 22 T.A.C. §195.4(3) (administrative sanctions were required to be noted in the board's minutes). See also Bd. of Medical Examiners, 11 Tex. Reg. 4852 (1986) (amending 22 T.A.C. 195.3(12); 195.4(3)).

Your fifth, sixth, and seventh questions are based on the assumption that board approval of an administrative sanction report is a disciplinary order. Because of our answer to question four, we need not answer this group of questions.

Your last two questions relate to section 4.05(d) of article 4495b, V.T.C.S. This provision states in part:

> (d) All complaints, adverse reports, investigation files, other investigation reports, and other investigative information in the possession of, received or gathered by the board or its employees or agents relating to a licensee, an application for license, or a criminal investigation or proceedings are privileged and confidential and are not subject to discovery, subpoena, or other means of legal compulsion for their release to anyone other than the board or its employees or agents involved in licensee discipline. . . . The board shall provide information upon request to a health-care entity concerning whether a complaint has been filed against a licensee or the licensee is under investigation by the board and the basis of and current status of that complaint or investigation. (Emphasis added.)

The underlined sentence of section 4.05(d) was added by the 70th session of the legislature. You ask whether this language requires the board to inform health-care entities upon request about any and all complaints filed against a physician since his license was originally issued and the status of those complaints, including complaints in closed investigative files.

A similar issue of statutory construction was addressed by the Texas Supreme Court in Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 668 (Tex. 1976), cert. denied, 430 U.S. 931. In this case, the Supreme Court considered whether the Texas Open Records Act, article 6252-17a, V.T.C.S., required disclosure of claims for workman's compensation benefits filed by injured

workers. The court rejected the argument that all claim information filed with the Industrial Accident Board prior to the act's effective date should remain confidential, stating as follows:

> First, it is clear that the Act is intended to apply to all records kept by governmental bodies, whether acquired before or after the Act's effective date. No exception is made for records which were considered confidential prior to June 14, 1973.

540 S.W.2d at 677. Section 4.05(d) applies to complaints generally and is not limited to, for example, complaints pending as of the effective date of the 1987 amendments to article 4495b, V.T.C.S., or to complaints filed after the effective date.

An examination of the purpose of this portion of section 4.05(d) supports our opinion that it requires the board to inform health-care entities upon request about all complaints about a physician filed since his license was originally issued. A "health-care entity" is defined to include the following:

> (A) a hospital that is licensed pursuant to the Texas Hospital Licensing Law (Article 4437f, Vernon's Texas Civil Statutes) or the Texas Mental Health Code (Articles 5547-88 through 5547-100, Vernon's Texas Civil Statutes);
>
> (B) an entity, including a health maintenance organization, group medical practice, nursing home, health science center, university medical school, or other health-care facility, that provides medical or health-care services and that follows a formal peer review process for the purposes of furthering quality medical or health care; and
>
> (C) a professional society or association, or committee thereof, of physicians that follows a formal peer review process for the purpose of furthering quality medical or health care.

V.T.C.S. art. 4495b, §1.03(a)(5). Health-care entities, as defined in the statute, include entities which employ physicians, give physicians staff privileges, or evaluate

the qualifications and professional competence of physicians. See generally V.T.C.S. art. 4495b, §1.03(a)(9) (definitions of "medical peer review committee" and "medical peer review"). These entities will be better able to evaluate a physician for employment or association with the entity if they have access to all complaints pertaining to the physician since he was first licensed.

Legislative history moreover indicates that the legislature was concerned about the ease with which a physician who lost his staff privileges for misconduct at one Texas hospital could simply move to another without being subject to any disciplinary action by the Board of Medical Examiners. House Bill No. 2560 was a response to legislative and public concerns about the effectiveness of state regulation of physicians and the board's ability to protect the public from incompetent practitioners. See House Insurance Committee, Bill Analysis S.B. No. 87, 70th Leg., 2d C.S. (1987) (analysis of bill which adopted technical amendments to H.B. No. 2560); see also House Public Health Committee, Bill Analysis C.S.S.B. 171, 70th Leg. (1987) (analysis of bill which was source of many provisions of H.B. No. 2560). These concerns were prompted in part by media reports about Texas physicians who were not disciplined by the board despite complaints, malpractice judgments, or other information which raised significant doubts about their competence to practice medicine. See House Research Organization, Disciplining the Doctors: Medical Regulation in Texas at 2 (March 10, 1987). In one widely publicized case, a physician lost his staff privileges at one hospital after a very large malpractice judgment was taken against him. He moved to another part of Texas, joined the staff of another hospital, and subsequently was responsible for a similar incident of malpractice. Id.

The contemporary circumstances out of which legislation arose and the legislative history may be consulted in interpreting a statute. San Antonio General Drivers, Helpers Local No. 657 v. Thornton, 299 S.W.2d 911 (Tex. 1957); Martin v. Sheppard, 102 S.W.2d 1036 (Tex. 1937). In construing a statute, a court shall consider the old law and the evil to be remedied. Gov't Code §312.005; Dolan v. Walker, 49 S.W.2d 695 (Tex. 1932). An interpretation of the quoted language of section 4.05(d) will give health entities access to information needed to evaluate physicians with whom they deal and will thus implement the legislative purpose of protecting the public from incompetent practitioners.

Our construction of section 4.05(d) gives health-care entities access to complaints about physicians which this statute declared to be "privileged" before the 1987 amendments. See Acts 1981, 67th Leg., 1st C.S., ch. 1, at 1, 24. Article I, section 16, of the Texas Constitution prohibits the adoption of any "retroactive law, or any law impairing the obligation of contracts. . . ." The constitutional prohibition against retroactive laws applies only to those laws destroying or impairing vested rights. Deacon v. City of Euless, 405 S.W.2d 59 (Tex. 1966); State Board of Registration for Professional Engineers v. Wichita Engineering Co., 504 S.W.2d 606 (Tex. Civ. App. - Fort Worth 1973, writ ref'd n.r.e.); McGinley v. McGinley, 295 S.W.2d 913 (Tex. Civ. App. - Galveston 1956, no writ). In our opinion, the legislature has not destroyed or impaired vested rights by providing health-care entities with access to complaints about physicians filed with the Board of Medical Examiners prior to the effective date of the 1987 amendments.

The Supreme Court opinion in the Industrial Foundation of the South v. Texas Industrial Accident Board case, supra, provides helpful authority on the constitutional issue as well as the issue of statutory construction. There are differences in the factual settings of the Supreme Court case and the question we are addressing, but these differences tend to support our opinion that the amendment to section 4.05(d) of article 4495b did not impair vested rights. The Industrial Foundation case dealt with benefit claims filed by workers on their own behalf, and the court determined that such claims were available to any member of the public, except for information within a "zone of privacy" protected by the Constitution. 540 S.W.2d at 681. Section 4.05(d) of article 4495b, V.T.C.S., makes complaints and their disposition available only to health care entities, not to the general public. Moreover, the complaints at issue in section 4.05(d) are complaints about licensed physicians filed by persons other than physicians who are the subject of the complaint. See Acts 1981, 67th Leg., 1st C.S., ch. 1, §1, at 1; §4 at 22, 23, 24 (former §§4.02 and 4.05(d) of article 4495b, V.T.C.S., which pertained to complaints). Although the complainants in Industrial Foundation might be able to say that they furnished the information in the expectation of confidentiality, the physicians cannot make such an assertion.

Moreover, the court in Industrial Foundation stated as follows:

> [W]e do not believe that information should be excepted from disclosure merely because

> the individual furnishing such information did so with the expectation that access to the information would be restricted. The Legislature has not, by determining that government information formerly kept confidential should be disclosed, impaired any vested right of a claimant to the confidentiality of the information. Unless there is such an impingement upon a vested right, the Legislature may require disclosure of information even though it was deemed confidential by an agency rule prior to the effective date of the Act. (Footnotes omitted.)

540 S.W.2d at 677-78. See generally Industrial Foundation of the South v. Industrial Accident Board, at 677 n. 15; Open Records Decision No. 55A (1975) (discussing possibility that information provided a governmental body prior to effective date of Open Records Act pursuant to express promise of confidentiality might be protected by article I, section 16 from disclosure under the act). See also Open Records Decision No. 64 (1975).

The physician who was subject to the complaint had no authority to determine whether it would be submitted to the board, whether the board would decide to investigate it, or whether the investigation would be closed without action or would lead to some kind of administrative action. Proceedings held under the former "administrative sanction" rules were subject to a rule which attempted to withhold

> the nature of the hearing or the results thereof except as required by Texas Civil Statutes article 4495b, these sections, or order of a court unless such disclosure is authorized by the licensee or his or her attorney; provided, however, that disclosure shall be made in accordance with the voluntary agreements or affidavits executed by licensee and shall be made to other state or federal agencies requesting such information which have jurisdiction or authorization over aspects of medical practice covered by such limitations or restrictions voluntarily accepted by licensee.

22 T.A.C. §195.3(12). This rule was amended in 1986 to provide that the "results as well as the letters, agreements, and affidavits shall be open records." 11 Tex. Reg. 4852 (Nov. 28, 1986). This language does not attempt to

make confidential the complaint or fact that it was dealt with by "administrative sanction" proceedings. The "administrative sanction" rules provide no legal basis for a licensee to expect that complaints against him would forever remain confidential. See Open Records Decision No. 468 (1987) (Open Records Act applies to complaints against peace officer filed before its effective date); see also Henderson Co. v. Thompson, 300 U.S. 258 (1937); Texas State Teachers Association v. State, 711 S.W.2d 421 (Tex. App. - Austin 1986, writ ref'd n.r.e.); State Board of Registration for Professional Engineers v. Wichita Engineering Co., supra (constitutional rules against impairing contracts and retroactive laws are not absolute and must yield to the state's right to safeguard the public safety and welfare). But see Travelers' Insurance Co. v. Marshall, 76 S.W.2d 1007 (Tex. 1934) (police power of state does not extend to enactment of legislation, effect of which impairs obligation of contracts).

In conclusion, the legislature has created an exception to the confidentiality provision found in the first sentence of section 4.05(d). The board is required to provide a health-care entity with the described information about all complaints filed against a physician since he was first licensed, as well as information about the status of such complaints, even if the matter has been resolved and the investigation closed.

You finally ask:

> Are closed investigation files privileged and confidential under the provisions of section 4.05(d) of the act (i.e., subject to disclosure under the Open Records Act) if the person requesting information is not acting on behalf of a health care entity?

Section 4.05(d) provides that "[a]ll complaints, adverse reports, investigation files, other investigation reports, and other investigative information" in the possession of the board relating to a licensee, license application, or a criminal investigation or proceedings

> are privileged and confidential and are not subject to discovery, subpoena, or other means of legal compulsion for their release. . . .

V.T.C.S. art. 4495b, §4.05(d). Section 3(a)(1) of the Open Records Act provides as follows:

>           Sec. 3.  (a)  All  information  collected,
>     assembled,  or  maintained  by  governmental
>     bodies pursuant  to law  or ordinance  or  in
>     connection with the  transaction of  official
>     business is public information and  available
>     to the public during normal business hours of
>     any governmental  body,  with  the  following
>     exceptions only:
>
>           (1)  information  deemed  confidential  by
>     law,  either Constitutional,  statutory,  or  by
>     judicial decision.  (Emphasis added.)

V.T.C.S. art.  6252-17a, §3(a)(1).  Information within  the
scope of the confidentiality  provision of section  4.05(d),
article 4495b, V.T.C.S., is excepted from public  disclosure
by section 3(a)(1)  as "information  deemed confidential  by
statutory law."  See generally Open Records Decision No. 458
(1987) (discussing scope of  predecessor to section  4.05(d)
confidentiality provision).

Whether the section  4.05(d) confidentiality  provision
applies to particular information  requested under the  Open
Records Act must  be decided  on a  case-by-case basis,  and
cannot be answered as a hypothetical matter.  If you receive
an Open Records request for information which you believe is
exempted from  public  disclosure  by  section  4.05(d),  as
incorporated into the Open  Records Act by section  3(a)(1),
you must submit the matter  to this office for a  determina-
tion of whether the information falls within this exception.
See V.T.C.S. art. 6252-17a, §7.

### S U M M A R Y

>           Rules of  the  Board  of  Medical  Examiners
>     authorizing "administrative sanction" hearings
>     are inconsistent with article 4495b, V.T.C.S.,
>     the Medical Practice Act, as amended by  House
>     Bill No. 2560 of the 70th Legislature, and are
>     therefore invalid.  Section 2.09(p) of article
>     4495b, V.T.C.S.,  requires the  board to  dis-
>     seminate summaries of the disciplinary  orders
>     it issues.  This provision  does not  require
>     the board to disseminate summaries of "admini-
>     strative  sanctions"  which  involved  disci-
>     plinary measures voluntarily agreed to by  the
>     licensee without a formal board order.  Since
>     the September 1, 1987 effective date of amend-
>     ments to  the  Medical  Practice  Act,  section
>     4.12 of  that act  has required  the board  to

issue a formal disciplinary order if it finds that an applicant or licensee has engaged in misconduct identified by that provision, and section 4.04(b) has provided that disposition of complaints by stipulation, agreed settlement, or consent order shall be considered a disciplinary order. Section 4.05(d) of article 4495b, V.T.C.S., requires the Board of Medical Examiners to inform health-care entities upon request about all complaints filed against a physician since his license was originally issued and about the status of those complaints, including those in closed investigative files. Information within the scope of the confidentiality provision of section 4.05(d) of article 4495b, V.T.C.S., is excepted from public disclosure under the Open Records Act by section 3(a)(1) of that act. Whether particular information is excepted from public disclosure by section 4.05(d) must be decided by this office on a case-by-case basis pursuant to section 7 of article 6252-17a, V.T.C.S.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General