TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-98-00376-CV






Institute of Cognitive Development, Inc.; Develo-Cepts, Inc.; and Carroll Stroman,


d/b/a Bitter Creek Farm, Appellants



v.



Texas Department of Mental Health and Mental Retardation,


and Private Provider Association of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-03086, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Appellants, providers of care for the mentally retarded, sued in district court for
a declaratory judgment that a rule (1) adopted by the Texas Department of Mental Health and Mental
Retardation (the "Department") is invalid because: (1) the Department failed to adopt the Rule
in substantial compliance with the Administrative Procedure Act ("APA") (2) and (2) the Rule
violates statutory and constitutional prohibitions against retroactive application. At the conclusion
of a trial on the merits, the district court rendered judgment against appellants on all claims for
relief. We will reverse the district court judgment, render judgment in favor of appellants, and
remand the issue of attorney's fees to the district court for further proceedings.

THE CONTROVERSY


 Institute of Cognitive Development, Inc. ("Institute"), Develo-Cepts, Inc., and
Carroll Stroman d/b/a Bitter Creek Farm ("Stroman") (collectively "appellants"), each own and
operate intermediate care facilities for the mentally retarded ("ICF/MRs"). On December 24,
1996, the Texas Department of Mental Health and Mental Retardation (the "Department")
published notice of proposed rules relating to the reimbursement of ICF/MRs in the Texas
Register. The notice stated that the agency was considering adopting, among other rules, the
following new rule: (3)


§ 406.156. Rate Setting Methodology


(a) Types of facilities. There are two types of facilities for purposes of rate
setting: state-operated and non-state operated. (5) Non-state operated facilities
are further divided by classes that are determined by the size of the facility.


(b) Classes of non-state operated services. A separate set of reimbursement rates
are set for each class of non-state operated services. The three classes are
large, medium, and small facilities. Large facilities are those with 14 or more
Medicaid contracted beds. Medium facilities are those with 9-13 beds. Small
facilities are those with eight or fewer Medicaid contracted beds.



See 25 Tex. Admin. Code § 406.156 (1997). This proposed rule classifies ICF/MRs based upon
the number of beds the facilities operate as Medicaid-contracted beds. ICF/MRs are then
reimbursed by the Department based upon that classification. Small and medium-sized facilities
are reimbursed at a higher per diem rate than large facilities. (6) 

 Even before the rules were published for comment, the Department began to receive
notice that certain facilities intended to reduce their number of Medicaid-contracted beds to place
themselves in a more favorable reimbursement bracket. Appellant Institute in December 1996
requested a reduction in the number of its licensed beds from the Texas Department of Human
Services ("TDHS"). (7) TDHS issued the Institute a new license to operate a thirteen bed facility
on January 29, 1997. Appellant Develo-Cepts requested a reduction in the number of licensed
beds for one of its facilities from fourteen to thirteen beds on December 30, 1996. TDHS issued
Develo-Cepts a license to operate thirteen beds effective December 30, 1996. Appellant Stroman
requested a reduction in the number of licensed beds from fifteen to thirteen on January 25, 1997. 
Stroman received the new license on January 29, 1997. The Department was notified of the
change in status of each appellant.

 As a consequence of the notifications, the Department staff prepared an analysis of
the budgetary implications to the Department if all eligible providers with fourteen or fifteen bed
facilities were to reduce their licensed capacity to thirteen or fewer beds. Because the study
indicated that there would be fewer beds available and that the available beds would be
reimbursable at a higher rate than the Department's initial audit projected, on January 30, the
Texas Board of Mental Health and Mental Retardation (8) (the "Board") adopted the following
amended rule (9) with revisions to the rule set forth in italics:


§ 406.156. Rate Setting Methodology


(a) Types of facilities. There are two types of facilities for purposes of rate
setting: state-operated and non-state operated. Non-state operated facilities
are further divided by classes that are determined by the size of the facility.


(b) Classes of non-state operated facilities. There is a separate set of
reimbursement rates for each class of non-state operated facilities, which are
as follows.


 (1) Large Facility - A facility with a Medicaid certified capacity of 14 or
more as of the first day of the full month immediately preceding a rate's
effective date or, if certified for the first time after a rate's effective date,
as of the date of initial certification.


 (2) Medium Facility - A facility with a Medicaid certified capacity of nine
through 13 as of the first day of the full month immediately preceding a
rate's effective date or, if certified for the first time after a rate's effective
date, as of the date of initial certification.


 (3) Small Facility - A facility with a Medicaid certified capacity of eight or
fewer as of the first day of the full month immediately preceding a rate's
effective date or, if certified for the first time after a rate's effective date,
as of the date of initial certification.



The Board also adopted a preamble which was incorporated into the Board's order of January 30,
1997. The preamble included the following explanation for the added language in section
406.156(b):


The department responds that the classes of facilities were determined based on
data collected by an independent consultant and resulting estimates of the cost of
operating various size facilities. The department further responds that the
definitions have been clarified to provide that a facility's size will be determined as
of the first day of the full month immediately preceding a rate's effective date in
order for the department to more accurately project program costs and allocate
program resources during the rate setting process.



(Emphasis added). The establishment of the certification date to precede the effective date of the
rule became known as the "look back period."

 At the Board meeting on January 30, 1997, the Board adopted the revised rule and
the reimbursement rates for state and non-state owned ICF/MRs. The rates, which represented
an increase over the rates received by appellants the previous year, were made retroactive and
effective as of January 1, 1997. The application to appellants of the revised rule's one-month
qualification period in section 406.156(b)(1) prior to the Rule's effective date resulted in the fixing
of the number of certified beds as of December 1, 1996. From January 1, 1997, then, in the case
of Develo-Cepts and January 29, 1997, for the Institute and Stroman, through the remainder of
the year, the Department applied the amended provisions of section 406.156(b)(1) to appellants
and reimbursed them as if they were providers with fourteen or more beds under the new rate
structure.

 The issue presented is whether the Rule is unlawfully retroactive as applied to
appellants because it establishes a date on which the facilities are classified that is prior to the
adoption and the effective date of the Rule. Appellants contend that because they reduced their
number of beds by the effective date of the Rule, they should be reimbursed at the higher rate for
medium-sized facilities, and that the Rule is impermissibly retroactive. The Department contends
that the Rule is not unlawfully retroactive because it does not impair a vested right. Because we
conclude that section 22.019(a) of the Texas Human Resources Code prohibits the retroactive
application of a rule, we conclude that the Department's application of the Rule to classify
appellants as large facilities based on their bed capacity on December 1, 1996, before the adoption
and the effective date of the Rule, was unlawfully retroactive as applied to these appellants.


DISCUSSION

 Appellants challenge section 406.156(b) on three grounds: (1) that the Rule was
not adopted in substantial compliance with the Texas Administrative Procedure Act; (2) that the
Rule violates section 22.019(a) of the Texas Human Resources Code, which expressly prohibits
retroactive application of rules, standards, guidelines, or policy interpretations; and (3) that the
Department's retroactive application of the Rule is unconstitutional because it impairs vested rights
of the appellants. We hold that the "look back provision" of the Rule is retroactive as it applies
to appellants and that it thus violates section 22.019(a) of the Texas Human Resources Code. 
Because we conclude that section 22.019 is dispositive of the issues before us, it is unnecessary
to reach the first and third issues.


Section 22.019(a) of the Texas Human Resources Code

 The Texas Legislature conferred upon TDHS the duty to set ICF/MR rates annually and to
independently adopt by rule the methodology used by the Department in setting rates for ICF/MR
facilities. (10) The legislature also provided procedural protections of the rights of Medicaid contract
providers and recipients. In 1987, the legislature enacted the following section:


Section 22.019. Due Process Procedures


(a) The department may not retroactively apply a rule, standard, guideline, or
policy interpretation.

 

(b) The department shall adopt any changes in departmental policy in accordance
with the rule-making provisions of the Administrative Procedure and Texas
Register Act . . . . The department shall use periodic bulletins and indexes to
notify contractors of changes in policy and to explain the changes. The
department may not adopt a change in departmental policy that takes effect
before the date on which the department notifies contractors as prescribed by
this subsection.


(c) The board shall adopt a rule requiring the department to respond in writing to
each written inquiry from a contractor not later than the 14th day after the date
on which the department receives the inquiry. (11)



In 1991, the legislature moved the authority to set rates to the Texas Health and Human Services
Commission and authorized the Commission to delegate and transfer the rate-setting and other
regulatory functions attendant to the provision of ICF/MR services to the Department. With the
transfer of function to the Department, the legislature in 1995 confirmed that:

the transfer of the powers and duties relating to the operation of a Medicaid
program included a transfer of all applicable powers and duties provided by
Chapters 21, 22, and 32, Human Resources Code, that relate to the operation of
the Medicaid program, including the power and duty to set rates. (12)



Thus, the legislature confirmed that the Department was authorized to set rates for ICF/MR
providers, but that it was also subject to all other duties inherent in the operation of a Medicaid
program.

 Appellants contend that the Rule is impermissibly retroactive in violation of section
22.019(a) of the Human Resources Code, which prohibits the retroactive application of rules,
standards, guidelines, and policy interpretations. (13) The Department responds that section
22.019(a) is merely a codification of the constitutional principle that a law is unlawfully retroactive
only when vested rights are destroyed or impaired. See Southwestern Bell Tel. Co. v. Public Util.
Comm'n, 615 S.W.2d 947, 956 (Tex. Civ. App.--Austin 1981, writ ref'd n.r.e.). While article
1, section 16 of the Texas Constitution expressly forbids retroactive legislation, it has been
consistently construed not to invalidate all retroactive legislation. Under our state charter, only
retroactive laws affecting "vested rights" that are legally recognized or secured are invalid. See
Texas Water Rights Comm'n v. Wright, 464 S.W.2d 642, 648-49 (Tex. 1971). This Court has
applied that principle to administrative rules. See, e.g., Grocers Supply Co. v. Sharp, 978 S.W.2d
638, 643 (Tex. App.--Austin 1998, pet. denied); Texas Dep't of Health v. Long, 659 S.W.2d 158,
160 (Tex. App.--Austin 1983, no writ).

 The majority of cases analyzing the retroactive application of statutes address the
nature of the right impaired and whether the right is "vested." In Wright, the Texas Supreme
Court addressed both issues: whether the rule in question was retroactive in effect and whether
vested rights were affected. The court recognized that a statute that has a definite impact on rights
created before the effective date of the statute and that allows an agency to take into consideration
conduct occurring before the effective date of the statute possesses a retroactive effect. Wright,
464 S.W.2d at 648-49. Recognizing that most statutes operate to change conditions and that not
every retroactive law is unconstitutional, the court stated:


Mere retroactivity is not sufficient to invalidate a statute. The fact that a statute
authorizes the consideration of events that occurred prior to the effective date of the
statute does not compel disapproval of the enactment, provided the affected parties
were afforded a reasonable time to protect their interests.



Id. at 648 (emphasis added). The court concluded that the retroactive effects of the statute did not
require its invalidation, in part because those subject to the statute were "afforded a reasonable
time" after the enactment of the provision to take such action as would preserve their rights. Id.

 All of appellants' facilities were licensed as thirteen bed facilities prior to the
adoption of the Rule. By reimbursing the appellants based on their licensed capacities as of
December 1, 1996--nearly a month before the Rule was proposed, two months before the Rule
was adopted and over three months before it became effective--the Department clearly applied the
Rule to conduct prior to the Rule's effective date as well as the date of adoption. Here, the action
taken by appellants prior to the effective date of the Rule did not protect their interests, but worked
to their detriment. Because of the "look back period" and the establishment of December 1, 1996
as the date on which each facility's status was determined, appellants' reduction in numbers of
beds served only to reduce the number of beds subject to the lower per diem rate of facilities
classified as large.

 The Department asserts that section 22.019(a) is a mere codification of the
constitutional principle that a law is unlawfully retroactive only when vested rights are affected. 
It argues that the language of the statute embraces the vested right principle protected by the Texas
Constitution. And by that route of argument, it concludes that the Rule is not unlawfully
retroactive because appellants did not have a vested right which was destroyed or impaired by its
enactment.

 To determine legislative intent, we turn first to the seemingly straightforward
language of the statute and principles of traditional statutory construction. "The meaning of the
statute must, in the first instance, be sought in the language in which the act is framed, and if that
is plain, . . . the sole function of the court is to enforce it according to its terms." Caminetti v.
United States, 242 U.S. 470, 485 (1917). If possible, then, we are to discern legislative intent
from the plain meaning of the words of the statute and enforce a provision as written. See City
of Austin v. L.S. Ranch, 970 S.W.2d 750, 752 (Tex. App.--Austin 1998, no pet.). If the statute
is clear and unambiguous, then the court is to apply the statute according to the plain meaning of
the words employed by the legislature. See Cail v. Service Motors, Inc., 660 S.W.2d 814, 815
(Tex. 1983). The court must not look to any one phrase, clause or sentence of the Act, but to the
entire Act itself. See Willingham v. Hagerty, 553 S.W.2d 137, 140 (Tex. Civ. App.--Amarillo
1977, no writ). Only when it is necessary to give effect to the clear legislative intent may we
insert additional words or requirements into a statutory provision. See Mauzy v. Legislative
Redistricting Bd., 471 S.W.2d 570, 572 (Tex. 1971). And, as a general rule, the legislature is
never presumed to have done a useless act. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d
535, 540 (Tex. 1981).

 By its very language, section 22.019(a) expressly prohibits the retroactive
application of rules and policy interpretations of the Department. We are cited to no authority for
the proposition that the legislature intended merely to codify the constitutional prohibition against
retroactive laws which incorporated a vesting requirement. Unlike the Texas Constitution, this
statute has no apparent vesting requirement. Appellants contend that section 22.019(a) could not
be more plain in its meaning. We agree. There is no ambiguity in the language of section
22.019(a) that would allow this Court to intuit the limitation urged by the Department. Unless
exceptional circumstances dictate otherwise, "when we find the terms of a statute unambiguous,
judicial inquiry is complete." Burlington N. R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454,
461 (1987) (citing Rubin v. United States, 449 U.S. 424, 430 (1981)).

 Certainly, a comparison of the language of the two provisions does not provide
support for the Department's argument. Article I, section 16 of the Texas Constitution provides
that "no. . . retroactive law . . . shall be made." The statute provides: "The department may not
retroactively apply a rule, standard, guideline or policy interpretation." Tex. Hum. Res. Code
Ann. § 22.019(a) (West 1990) (emphasis added). There is no commonality in language that would
warrant the interpretation that the statute is derived or based upon the constitutional provision. 
In addition, under the Code Construction Act, the term "may not" "imposes a prohibition and is
synonymous with 'shall not.'" Tex. Gov't Code Ann. § 311.016(5) (West 1998).

 Even apart from the clear and unambiguous language of the statute, we conclude
that the legislature's intent is clear. When we examine the subsection in its context, we find no
reason to question its meaning. Located in a section entitled "Due Process Procedures,"
subsection (a) precedes two subsections that deal with similar concerns. Thus, section 22.019(b)
requires that changes in departmental policy are to be adopted in accordance with the APA and
that the agency is to use periodic bulletins and indexes to notify contractors of changes in policy
and to explain changes. Further, "[t]he department may not adopt a change in departmental policy
that takes effect before the date on which the department notifies contractors as prescribed by this
subsection." Tex. Hum. Res. Code Ann. § 22.019(b) (West 1990). Subsection (c) requires the
adoption of a rule necessitating the Department to respond in writing within fourteen days of
receipt to each written inquiry from a provider. Each of the three subsections manifests a concern
with notice to contractors and the prospective application of the Department's rules and policies. 

 The Department argues that if we accept appellants' interpretation that section
22.019(a) does not require an impairment of a vested right, such a construction would thwart the
plain purpose of the legislature in its enactment of Chapters 21, 22, and 32 of the Human
Resources Code. The Department specifically calls our attention to section 32.0322 of the Human
Resources Code, which authorizes the Department to adopt a rule allowing the consideration of
a provider's criminal history in determining the provider's eligibility to participate in a Medicaid
program. (14) It contends that if we adopt appellant's construction of section 22.019(a) the
Department will be prohibited from considering an applicant's criminal history prior to the law's
enactment. We believe this fear is unfounded.

 Traditional principles of statutory construction make clear that when two statutes
conflict irreconcilably, the later-enacted statute controls, and further that courts are enjoined to
harmonize and give effect to both enactments if at all possible by assigning to each a meaning that
will permit both to stand in harmony. See Tex. Gov't Code Ann. § 311.025(a) (West 1988);
Commissioners Court v. Criminal Dist. Attorney, 690 S.W.2d 932, 936 (Tex. App.--Austin 1985,
writ ref'd n.r.e.). We do not find them necessarily in irreconcilable conflict. In any event,
section 32.0322, which was enacted in 1997, would control since it is the later-enacted statute. (15)

 Moreover, a valid exercise of the police power by the legislature to safeguard the
public safety and welfare can prevail over a finding that a law is unconstitutionally retroactive. 
See Barshop v. Medina County Underground Water Dist., 925 S.W.2d 618, 637-38 (Tex. 1996);
Texas State Teachers Ass'n v. State, 711 S.W.2d 421, 424 (Tex. App.--Austin 1986, writ ref'd
n.r.e.). While that issue is not before us, we assume without deciding that it is well within the
police power of the State to adopt standards for the licensing and eligibility of persons applying
to enroll as providers under the State's medical assistance program. We need not address each
possible incongruity in application of the two statutes.

 Section 22.019(a) is unique. The legislature has prohibited the retroactive
application of rules, standards, guidelines and policy interpretations in this administrative context
alone. Appellants contend that no other agency--other than those overseeing Medicaid
providers--is prohibited from such retroactive application by an explicit statute. Because of the
extensive regulation of ICF/MRs by various agencies and the consequences of the failure of an
entity to comply with a rule, standard, guideline or policy interpretation, the legislature could well
determine that it should prohibit the retroactive application of these various agency determinations
and require prospective application with notice as set forth in subsection (b). In light of the statute
itself, the context of its application, the words employed, and traditional principles of statutory
construction, we find that the legislature intended to give providers fair notice of changes in
departmental rules and policies. We conclude that section 22.019(a) prohibits the retroactive
application of section 406.156(b) as to these appellants. (16)

Attorney's Fees

 Appellants' final issue challenges the district court's denial of attorney's fees. The
decision to grant or deny attorney's fees in declaratory judgment actions is within the district
court's discretion. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). Because our
disposition of the case on appeal substantially affects the district court's judgment, it could also
affect its decision as to the award of attorney's fees. Accordingly, we reverse that portion of the
district court's judgment that denies attorney's fees to appellants and remand the cause to the
district court for reconsideration in light of our disposition.


CONCLUSION

 We reverse the district court's judgment and render judgment in favor of appellants. 
We remand the cause to the district court to exercise its discretion as to whether attorney's fees
should be awarded.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: June 30, 1999

Do Not Publish

1. See 25 Tex. Admin. Code § 406.156(b) (1997) (the "Rule").
2. See Tex. Gov't Code Ann. § 2001.001-.902 (West 1999).
3. At the same time, the Department was also conducting a notice and comment period to
obtain public input on the rates at which to reimburse ICF/MRs during 1997. (4)
4. 
 " - " 
 § 
5. Appellants' facilities are all non-state operated facilities.
6. For example, the per diem rate payable for intermittent care in a small facility in 1997 was
$121.19, for a medium facility was $101.80, and for a large facility was $79.27.
7. The license division of the Texas Department of Human Services ("TDHS") is responsible
for issuing licenses to operate ICF/MR facilities.
8. The Department is composed of the Texas Board of Mental Health and Mental Retardation,
the commissioner of mental health and mental retardation, and a staff under the direction of the
commissioner. See Tex. Health & Safety Code Ann. § 532.001(a) (West Supp. 1999). The Board
shall adopt rules and develop basic and general policies to guide the Department. Id. § 532.015(a)
(West 1992).
9. The amended rule, containing the "look back period," was never published for comment. 
It was published as a final rule in the Texas Register on March 14, 1997, and became effective by
operation of law on March 25, 1997. See 22 Tex. Reg. 2763-64 (1997).
10. See Tex. Hum. Res. Code Ann. § 32.0381 (West 1990).
11. See Tex. Hum. Res. Code Ann. § 22.019 (West 1990).
12. See Act of March 23, 1995, 74th Leg., R.S., ch. 6, § 1(c)(3), 1995 Tex. Gen. Laws 27,
28.
13. See Tex. Hum. Res. Code Ann. § 22.019(a) (West 1990). 
14. Section 32.0322(b) provides: "The department by rule shall establish criteria for revoking
a provider's enrollment or denying a person's application to enroll as a provider under the medical
assistance program based on the results of a criminal history check." Tex. Hum. Res. Code Ann.
§ 32.0322 (West Supp. 1999).
15. A statute may be repealed by implication. See McInnis v. State, 603 S.W.2d 179, 183
(Tex. 1980). Thus, where a later enactment is intended to embrace all the law upon the subject
with which it deals, it repeals all former laws relating to the same subject. Id. But a new statute
"should be construed so that its operation will harmonize with existing laws, unless a contrary
intention is clearly manifested by its provisions." Id. at 184-85.
16. Since we have sustained appellants' position with respect to their declaratory judgment
action, we need not reach the other issues regarding the validity of the Rule generally. Section
2001.038(a) provides, in pertinent part: "The validity or applicability of a rule . . . may be
determined in an action for declaratory judgment if it is alleged that the rule or its threatened
application interferes with or impairs, or threatens to interfere with or impair, a legal right or
privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West 1999) (emphasis added). 
No provider other than appellants can complain about the retroactive application of the Rule
because it will have been in effect for some time when rates are adjusted again and the statute of
limitations has run on the institution of any new procedural challenges to the Rule. See id.
§ 2001.035(b) (statute of limitations expires two years from effective date of rule). Accordingly,
we conclude that the Rule in invalid as applied to appellants only.


er attorney's fees
should be awarded.