**Johnny ANDRADA, Individually and for all others similarly situated, Appellant,**

v.

**CITY OF SAN ANTONIO, Appellee.**

**No. 15740.**

Court of Civil Appeals of Texas, San Antonio.

July 13, 1977.

Rehearing Denied Sept. 13, 1977.

CADENA, Chief Justice.

Plaintiff, Johnny Andrada, appeals from a judgment denying his prayer for an injunction restraining the defendant, City of San Antonio, from enforcing its "wrecker" ordinance and from a contract entered into between City and San Antonio Wrecker Service giving the latter the exclusive right to tow away, on or over the City streets, any vehicle which had been abandoned or involved in a collision. The trial court also denied plaintiff's prayer for judgment declaring the ordinance and contract unconstitutional.

According to plaintiff's petition, he sought relief not only for himself individually, but also as representative of a "class" described as including the following:

1. Those citizens of San Antonio "who belong to private organizations that furnish free towing service" to their members, such as the American Automobile Association.

2. Citizens of San Antonio who own and operate their own towing equipment and who are "capable and desirous of serving themselves and their customers." In effect, this portion of the class consists of persons in the towing business.

3. Those persons who "regularly do business with a towing firm." This portion of the class apparently consists of persons engaged in the business of repairing disabled vehicles.

4. All other citizens of San Antonio who own and operate vehicles on the public ways of the City.

There is nothing in the pleadings or the evidence which suggests that nominal plaintiff is a member of the first three subclasses included in the "class" which he purports to represent. But City did not question, in the trial court, the status of nominal plaintiff as a true representative of the "class" described in the petition and in any event, the questions raised by plaintiff in his individual capacity may be properly considered. We do not here determine whether the thousands of persons whom plaintiff claims to represent will be bound, under the doctrine of res judicata, by the disposition of this case.

Franz & Franz, Charles L. Franz, Jr., San Antonio, for appellant.

James M. Parker, City Atty., Jackson C. Hubbard, Asst. City Atty., San Antonio, for appellee.

As already stated, the wrecker ordinance prohibits any wrecker operator from handling, on or over the public ways of the City, any vehicle which has been abandoned or has been involved in a collision unless directed to do so by the Chief of Police or his authorized representative. In a case in which 16 operators of wrecker services challenged the validity of this ordinance, this Court held that plaintiffs could not maintain the suit in the absence of a showing of a vested property right to use the streets of the City of San Antonio for the purpose of carrying on their business. *Mooney v. City of San Antonio*, Tex.Civ.App., 386 S.W.2d 638 (1965, writ ref'd). In that case, plaintiffs alleged that the effect of the ordinance was to give the City of San Antonio a monopoly on the wrecker business, and that City had entered into a contract with one wrecker operator under which such operator was to provide wrecker service to the City for the purpose of removing from the City streets all vehicles which had been abandoned or had been involved in a collision, as well as all illegally parked vehicles.

The challenge in this case is based on the fact that the ordinance prohibits the individual whose car has been involved in a collision from calling the wrecker operator of his choice for the purpose of having his disabled vehicle towed away. In this case, in addition to his own testimony, plaintiff offered testimony from one individual and from five wrecker operators and one former wrecker operator. The testimony may be summarized as establishing the fact that a person involved in a collision is not permitted to call the towing service of his choice but must, despite his protest, engage the services of the wrecker service with whom the City has a current contract.

Plaintiff does not here assert that operators of towing services have a vested property right to use the City streets in the operation of their business. Instead, he asserts that the ordinance and exclusive towing contract deprive the citizen from contracting with the towing service of his choice.

One of plaintiff's complaints asserts that the ordinance is enforced even when the vehicle to be towed is on private property. The evidence in this case is not of such probative force as to compel the conclusion that this factual allegation is true.

Plaintiff points out that the cases upholding the validity of ordinances regulating the towing business involve ordinances which, unlike that of San Antonio, permit the owner of a vehicle to call the wrecker of his choice.

It is obvious that every regulation of business necessarily affects the rights of persons engaged in such business, but also the rights of persons dealing or desiring to deal with such operators. Thus, if it is unlawful for the operator of a shoe store to sell his merchandise on Sundays, the restriction on Sunday sales not only prevents the transaction of business by the vendor but necessarily prevents the potential customer from purchasing shoes on Sunday. Admittedly, the restriction is less drastic than that which is involved in this case, but where a restriction on business constitutes a valid exercise of the police power, the fact that the regulation necessarily restricts the activities of persons not engaged in the regulated business is not of itself sufficient to brand the regulation as unconstitutional.

There is ample testimony to support the conclusion that the absence of restrictions on wrecker operators created serious problems. The not unusual situation was for several wreckers to appear at the scene of an accident, creating problems for officers who were attempting to restore the normal flow of traffic and seriously interfering with the efforts of police officers to investigate the accident and file the required reports. Wreckers were equipped with radios capable of monitoring the police frequencies. When the wreckers arrived on the scene of the accident they would engage in fiercely competitive efforts to induce the car owners to engage their services. The result was disorder and confusion at the scene of the accident.

Before the adoption of the present ordinance and system, City made several efforts to control the situation. At one time, the

plan was to have the police dispatcher call record operators in rotation. Later the plan involved dividing the City into zones and, in case of an accident, having the police dispatcher call the wrecker operator nearest to the scene of the accident. All of the prior plans were unsuccessful, and one of the problems was that the various wrecker operators who appeared at the scene would assert that they had been called and that their appearance at the scene of the accident was in no way traceable to information they had obtained by monitoring the police frequency. The next-to-last step was a decision by the City to operate its own wrecker service. City purchased towing equipment, but after some time it was decided that more efficient service could be obtained if City contracted with private operators. The contract is let on the basis of bids submitted by persons operating wrecker services within the City, and the evidence indicates that invitations to bid are sent to all such operators. However, due to the great number of accidents on the streets of San Antonio, it appears that the majority of persons in the wrecker business decline to submit bids because they lack equipment sufficient to perform efficiently.

It is clear that to uphold plaintiff's contention would, in effect, seriously undermine the effort to control the problem. At the very least, it cannot be said that plaintiff has established the lack of a reasonable relationship between the regulation and the legitimate police power objective which City is attempting to accomplish. To hold that while a city has the power to regulate and restrict the right of a purveyor of goods and services to use the city streets, but lacks the power to regulate or restrict the rights of others to demand that such purveyor perform his commercial operations in city streets, amounts to saying that the operator of the business is immune from regulation.

It is true, as plaintiff points out, that liberty of contract is generally said to be a part of that "liberty" which is protected by due process clauses. It is also true that liberty of contract has been alluded to as a "property right." *See*, for example, *Coppage v. Kansas*, 236 U.S. 1, 14, 35 S.Ct. 240, 59 L.Ed. 441 (1915). But even at a time when courts were alert to strike down regulations of economic freedom, ameliorative legislation was upheld by acknowledging that freedom of contract is a qualified, not an absolute, right. "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. . . . [T]he legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted . . . ." *Chicago V. & Q. R. Co. v. McGuire*, 219 U.S. 549, 567, 570, 31 S.Ct. 259, 262, 55 L.Ed. 328 (1911).

■ Not only may the making of future contracts be prohibited by exercise of the police power, but even existing contracts may, in effect, be invalidated, despite the constitutional prohibition of state laws impairing the obligation of contract. U.S. Const. Art. I, § 10. "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. * * * . . . [I]n other words, that parties, by entering into contracts, may not estop the legislature from enacting laws intended for the public good." *Manigault v. Springs*, 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed.2d 274 (1905). *See also Midland Realty Co. v. Kansas City Power & Light Co.*, 300 U.S. 109, 57 S.Ct. 345, 81 L.Ed. 540 (1937).

■ There is nothing in the record before us which compels the conclusion that the regulation in question is not reasonable.

The judgment of the trial court is affirmed.