**TEXAS STATE TEACHERS ASSOCIATION, et al.,**
Appellants,

v.

**The STATE of Texas, et al., Appellees.**

**No. 14676.**

Court of Appeals of Texas, Austin.

June 13, 1986.

Rehearing Denied June 17, 1986.

Dean A. Pinkert, Fickman, Van Os, Waterman, Dean & Moore, P.C., Austin, for Tex. State Teachers Ass'n (TSTA), Charles N. Beard, Olivia Bestiero, Henry C. Jennings and Lynn I. DeGeer.

George M. Kirk, Strahan & Kirk, Houston, for Fight for Right, Inc., Barbara Despres, Marion Crampton, Robert Day and Bo Christian.

Jim Mattox, Atty. Gen., Kevin O'Hanlon, Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

SHANNON, Chief Justice.

Appellants, the Texas State Teachers Association and others, sued appellees, the Central Education Agency, the State Board of Education and others, in the district court of Travis County seeking a declaratory judgment that Tex.Educ.Code Ann. § 13.047 (Supp.1986) is unconstitutional. Section 13.047 imposes certain competency testing requirements on certified school teachers and administrators. Appellants also sought an injunction prohibiting appellees from implementing the testing law. After hearing, the district court denied appellants' motion for summary judgment and granted appellees' summary judgment motion, declaring § 13.047 constitutional and denying the requested injunctive relief. This Court will affirm the judgment.

In 1984, the Legislature amended the Texas Education Code adding, among other things, § 13.047. In general, § 13.047 requires that public school educators must pass an examination on or before June 30, 1986, as a condition to continued certification as teachers. Section 13.047 provides:

(a) The board shall require satisfactory performance on an examination prescribed by the board as a condition to continued certification for each teacher and administrator who has not taken a

certification examination under Section 13.032(e) of this code.

(b) The board shall prescribe an examination designed to test knowledge appropriate to teach primary grades and an examination designed to test knowledge appropriate to teach secondary grades. The secondary teacher examinations must test the knowledge of each examinee in the subject areas listed in Section 21.101 of this code in which the examinee is certified to teach and is teaching. If a teacher is not tested in an area of certification, the teacher must take the examination for that area within three years after beginning to teach that subject. The administrator examinations must test administrative skills, knowledge in subject areas, and other matters that the board considers appropriate. The examinations must also test the ability of the examinee to read and write with sufficient skill and understanding to perform satisfactorily as a professional teacher or administrator.

(c) In developing the examinations, the board shall solicit and consider the advice of classroom teachers and administrators.

(d) Each teacher must perform satisfactorily on the applicable examination on or before June 30, 1986, to teach the subject at a particular level unless a school district establishes to the satisfaction of the commissioner of education that there is emergency need. A teacher may not teach under a determination of emergency need for more than one school year.

(e) The board, in conjunction with school districts, shall provide teachers and administrators with an opportunity for board-developed preparation for the examinations, including an opportunity for remedial aid.

(f) The board may limit the number of times a teacher or administrator who fails to perform satisfactorily on an examination may retake it, but each teacher must be given more than one opportunity to perform satisfactorily. The board shall determine the level of performance that is satisfactory.

(g) The board may exempt from the examination required by this section any person who, before the examination adopted under this section is prescribed, performed satisfactorily on an examination administered by an employing district if the board finds the examination to be substantially the same or at least as difficult as the examination prescribed by the board.

Section 13.047(b) provides that the educator be tested concerning his ability to "read and write" so as to perform satisfactorily as a teacher or administrator. In addition, § 13.047(b) provides that the Board examine the educator in the subject matter which he teaches.

The Legislature did not initially vote an appropriation funding the administration of the examinations. At its next session, however, the Legislature voted an appropriation to fund the examination, but by rider, limited the use of the money for the administration of a literacy examination.

By their suit, appellants sought a declaration that § 13.047 is unconstitutional on its face and as implemented by the Board. The district court concluded, however, that § 13.047 was constitutional on its face, as was its implementation by the Board.

Appellants' major argument is that § 13.-047 impairs the obligation of contracts and is a retroactive law in violation of Tex. Const.Ann. art. I, § 16 (1984). Section 16 prohibits "retroactive laws" and laws which impair the obligation of contracts.

Appellants assert that teachers' certificates are statutory contracts, or at least vested rights, which the Legislature cannot constitutionally impair. The argument is predicated upon the language "valid for life, unless cancelled by lawful authority" which the parties agree appears on the certificates. The quoted language was statutory from 1955 until 1979; the phrase still appears in the Board's regulations. Appellants further argue that when this language first appeared in the statute, the Legislature also set out three specific statutory grounds for cancellation, which ap-

pellants maintain are exclusive grounds upon which the certificate can be "cancelled by lawful authority."[1] The combination of the language, "valid for life, unless cancelled by lawful authority," in addition to three specified reasons for cancellation, appellants insist, demonstrates the Legislature's intent to create statutory contracts in the form of teachers' certificates, which the Legislature could not later impair. Should the certificates not be regarded as contracts, appellants suggest that the statutes surely bestow upon teachers some character of vested property right in their certificates which cannot be retroactively impaired.

Appellants recognize that under certain circumstances the Legislature may constitutionally impair contract rights or other vested rights, but assert that no such circumstances exist in this cause. Appellants claim that, although an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose, there has been no showing of necessity for competency testing, and that, in fact, testing is not necessary since many other alternatives are available to the state to achieve teacher competency.

In defense of the judgment, appellees assert that a teacher's certificate is not a contract entitled to the protection of art. I, § 16, but instead is merely a license subject to the state's continuing power of regulation. Appellees claim, alternatively, that

even should the licensing of a teacher create some character of vested right within the ambit of the constitutional provisions, the state has a compelling interest in quality public education which justifies the impairment of teachers' rights in their certificates.

Even though this Court doubts appellants' argument that teachers' certificates are the type of protected rights that fall within the meaning of art. I, § 16, *Bryant v. State*, 457 S.W.2d 72, 79 (Tex.Civ.App. 1970, writ ref'd n.r.e.), we will assume so for purposes of this opinion.

■ "Although the language of the Contract Clause [U.S.Const. art. I, § 10] is facially absolute, its prohibition must be accommodated to the inherent police power of the state 'to safeguard the interests of its people.'" *Energy Reserves v. Kansas Power & Light*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). In the main, § 16 has been construed in a like manner. "The constitutional rules against impairing contracts and retroactive laws [§ 16] are not absolute and must yield to a state's right to safeguard the public safety and welfare." *Kilpatrick v. State Bd. of Registration for Professional Engineers*, 610 S.W.2d 867, 871 (Tex.Civ.App.1980, writ ref'd n.r.e.); *State Bd. of Registration for Professional Engineers v. Wichita Engineering Co.*, 504 S.W.2d 606 (Tex.Civ.App.1973, writ ref'd n.r.e.).[2]

1. § 13.046:
   (a) Any teacher's certificate issued under the provisions of this code or under any previous statute relating to the certification of teachers may be suspended or cancelled by the state commissioner of education under any one or more of the following circumstances:
   (1) on satisfactory evidence that the holder is conducting his school or his teaching activities in violation of the laws of this state;
   (2) on satisfactory evidence that the holder is a person unworthy to instruct the youth of this state; or
   (3) on complaint made by the board of trustees that the holder of a certificate after entering into a written contract with the board or trustees of the district has without good cause and without the consent of the trustees abandoned the contract.

   (b) Before any certificate shall be suspended or cancelled the holder shall be notified and shall have an opportunity to be heard. Any person whose certificate is suspended or cancelled by the state commissioner of education may appeal to a district court in Travis County.

2. In *Travelers' Ins. Co. v. Marshall*, 124 Tex. 45, 76 S.W.2d 1007 (1934), the court announced that, since the contract clause of the Texas constitution was adopted in 1876, Texas courts should follow the federal interpretation to that date but not thereafter. The court then rejected the analysis that the contract clause yields to a valid exercise of the police power. 76 S.W.2d at 1025.
   Even though *Travelers* has never been overruled, it has not been cited for this proposition. In 1937, the U.S. Supreme Court distinguished *Travelers* as follows:

The language of the contract clause must be balanced against the state's interest in exercising its police power. *Energy Reserves v. Kansas Power & Light, supra.* Accordingly, the nature of the power being exercised by the state is important in determining whether any resulting impairment is permissible.

The imposition of teacher-testing by § 13.047 is a valid exercise by the Legislature of its police power. The police power is broad and comprehensive. "It hinges upon the public need for safety, health, security, and protection of the general welfare of the community." *City of Coleman v. Rhone,* 222 S.W.2d 646, 648 (Tex.Civ. App.1949, writ ref'd). "Police power is not static and unchanging. As the affairs of the people and government change and progress, so the police power changes and progresses to meet the needs." *City of Breckinridge v. Cozart,* 478 S.W.2d 162, 165 (Tex.Civ.App.1972, writ ref'd n.r.e.).

■ The Legislature, in the exercise of the police power, may regulate occupations and professions. *Lowe v. Texas Liquor Control Board,* 255 S.W.2d 252 (Tex.Civ. App.1952, no writ). Many occupational and professional regulatory schemes have been upheld as valid exercises of the police power. *See Texas State Bd. of Public Accountancy v. Fulcher,* 515 S.W.2d 950 (Tex.Civ. App.1974, writ ref'd n.r.e.) [accountants]; *Daniel v. Tyrrell and Garth Investment Co.,* 127 Tex. 213, 93 S.W.2d 372 (1936) [insurance companies]; *Bryant v. State,* 457 S.W.2d 72 (Tex.Civ.App.1970, writ ref'd n.r.e.) [attorneys]; *Dovalina v. Albert,* 409 S.W.2d 616 (Tex.Civ.App.1966, writ ref'd n.r.e.) [polygraph operators]; *Texas State*

*Bd. of Barber Examiners v. Beaumont Barber College,* 454 S.W.2d 729 (Tex.1970) [barbers]; *Dodgen v. Depuglio,* 209 S.W.2d 588 (Tex.1948) [fishermen]; *Francisco v. Board of Dental Examiners,* 149 S.W.2d 619 (Tex.Civ.App.1941, writ ref'd) [dentists]. Teaching has now been declared by statute to be a profession. Tex.Educ. Code Ann. § 13.031 (Supp.1986).

■ More specifically, the Legislature's duty to establish and maintain a public school system in Texas involves the exercise of the state's police power. *See Passel v. Ft. Worth I.S.D.,* 429 S.W.2d 917 (Tex.Civ.App.1968), rev'd on other grounds, 440 S.W.2d 61. ["We think it well within the police power of the State to adopt standards to guide the administration of our public school system ..."]; *see also Spring Branch I.S.D. v. Stamos,* 695 S.W.2d 556 (Tex.1985); *Mumme v. Marrs,* 120 Tex. 383, 40 S.W.2d 31 (1931). The Legislature's duty to provide for the public school system is of constitutional magnitude, Tex.Const.Ann. art. VII, § 1 (1955), and has been recognized as a duty of "paramount importance." *Ferrell v. Dallas I.S.D.,* 392 F.2d 697 (5th Cir.1968).

Because regulation of the teaching profession and of the public education system is a valid exercise of the police power, this Court has concluded that any impairment of appellants' rights which has occurred is justified as an incident to the valid exercise of the police power. Points of error one and two are overruled.

Alternative to their constitutional attack on the testing requirement, appellants attack appellees' administration of the test for allegedly failing to implement the statu-

The contention is that the contract clause of the Texas Constitution, unlike that of the Federal Constitution, prevents the State from enacting a police measure which will result in impairing a contract. In support of that proposition, the company cites [Travelers], decided by the Supreme Court of Texas in 1934. But that case does not support the proposition. The statute there held void was a moratorium statute specifically directed against the terms of contracts. The statute here challenged is not directed against any term of any contract.

*Henderson Co. v. Thompson,* 300 U.S. 258, 266, 57 S.Ct. 447, 451, 81 L.Ed. 632, 638 (1937). Though the propriety of the *Thompson* distinction may be questioned, and it cannot provide a controlling interpretation of the Texas constitution, the *Thompson* distinction has subsequently been followed in some Texas opinions. *Dovalina v. Albert,* 409 S.W.2d 616, 619 (Tex.Civ.App. 1966, writ ref'd n.r.e.); *Biddle v. Bd. of Adjustment,* 316 S.W.2d 437, 441 (Tex.Civ.App.1958, writ ref'd n.r.e.).

**426**

tory directive expressed in § 13.047. Appellants claim that § 13.047(b) envisages an examination testing both the teacher's knowledge in his subject and the teacher's literacy. Appellants contend that the Legislature did not intend for teachers to be decertified solely on the basis of their failure to pass a literacy test.

Appellees respond that § 13.047 does not attempt to prescribe the details of the testing requirement, but instead leaves the details to the discretion of the State Board of Education. Nothing in § 13.047 prohibits the Board from administering the literacy and knowledge components of the examination in stages. Furthermore, the Board is given discretion to require teachers to pass both parts of the test independently, because § 13.047(f) states that "[t]he board shall determine the level of performance that is satisfactory."

In addition, appellees note that the Legislature, when it passed the legislation in 1984, did not appropriate money to administer the tests. When the Legislature did appropriate a sum of money in the 1985 session, it limited the use of the funds to the administration of examinations to test reading and writing skills. The Board was unable to administer the subject-matter part of the test because no funds were appropriated for that purpose.

From a reading of § 13.047(b), it may be concluded that a teacher is required to take one examination which will test both the educator's subject-matter knowledge and his ability to read and write. Admittedly, this construction lends some credence to appellants' contention that the Legislature did not intend teachers to be de-certified solely on the basis of failing a literacy examination.

On the other hand, a reading of §§ 13.-110(8)[3] and 21.203(b)[4] reveals that each section permits termination or nonrenewal of teachers who fail to perform satisfactorily on at least one examination under § 13.047, thereby strongly implying that teachers may be required to take more than one examination. Also, § 13.047(f) directs the Board to set a satisfactory level of performance, and nothing prohibits the Board from requiring a passing score on both the literacy and the subject-matter portions of the examination.

■ In short, the statutory language is not clear regarding the form and content of the competency examination. The language, however, does not foreclose the possibility of separate subject-matter and literacy exams or the possibility that the Board could require teachers to pass the two parts independently.

Having concluded that the statute does not prohibit the Board, in its discretion, from giving the competency test in stages, it follows that the Legislature's act of appropriating money only for the literacy stage does not alter or amend the statute. Nothing in the constitution prohibits the Legislature from limiting any appropriation by apt words expressive of its intent. *Linden v. Finley*, 92 Tex. 451, 49 S.W. 578, 579 (Tex.1899).

This Court has addressed appellants' major contentions. Appellants have other points of error which this Court has considered and, having found them without merit, overrules them.

The judgment is affirmed.

3. § 13.110:
Any teacher employed under a continuing contract may be released at the end of any school year and his employment with the school district terminated at that time, or he may be returned to probationary contract employment for not exceeding the three succeeding school years, upon notice and hearing (if requested) as hereinafter provided, ... for any of the following additional reasons:
(8) failure by a person required to take an examination under § 13.047 of this code to perform satisfactorily on at least one examination under that section on or before June 30, 1986.

4. § 21.203(b):
Reasons for nonrenewal must include the failure of a person required to take an examination under § 13.047 of this code to perform satisfactorily on at least one examination under that section on or before June 30, 1986.

Any motion for rehearing shall be filed in the office of the Clerk of this Court on or before 5 P.M., June 16, 1986.