Affirmed and Majority and Dissenting Opinions filed May 4, 2006









Affirmed
and Majority and Dissenting Opinions filed May 4, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00658-CV

____________

 

BARBARA ROBINSON,
INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JOHN ROBINSON, DECEASED, Appellant

 

V.

 

CROWN CORK &
SEAL COMPANY, INC., Appellee

 



 

On Appeal from the 55th
District Court

Harris County, Texas

Trial Court Cause No. 02-50324A

 



 

D I S S E N T I N G    O P I N I O N








In deciding whether the legislation at
issue violates the prohibition against retroactive laws in the Texas Bill of
Rights, the court concludes that if the Texas Legislature reasonably exercises
its police power to enact a statute, then that statute does not violate the
Texas Constitution, even though the statute is retroactive and destroys the
vested rights of some individuals.  The
people of the State of Texas, in emphatic and compelling language set forth in
section 29 of the Texas Bill of Rights, have expressly withheld from the
Legislature the authority to enact retroactive laws in violation of section 16 of
the Texas Bill of Rights.  Because the
Legislature has no police power to enact retroactive laws in violation of
section 16, this court should not use a police-power analysis to determine
whether the statute is unconstitutionally retroactive.  Furthermore, the weight of precedent from the
Texas Supreme Court and this court requires the use of the vested-rights
analysis.  Under this analysis, the
statute in question destroys the vested rights of the appellant in this case
and therefore violates section 16 of the Texas Bill of Rights, as applied.  Because the court, using a police-power
analysis, reaches the opposite conclusion, I respectfully dissent. 

                  The Applicable Text of the Texas Constitution

In her first issue, Mrs. Robinson asserts
that Chapter 149 of the Texas Civil Practice and Remedies Code (hereinafter Athe Statute@) violates section
16 of the Texas Bill of Rights as applied to her claims against appellee Crown
Cork & Seal Company, Inc.  In
interpreting the Texas Constitution, Texas courts rely heavily on the literal
text and must give effect to its plain language.  Republican Party of Texas v. Dietz,
940 S.W.2d 86, 89 (Tex. 1997).  The Texas
Constitution states in pertinent part:

                                                     PREAMBLE

Humbly invoking the blessings of
Almighty God, the people of the State of Texas, do ordain and establish
this Constitution.

                                                      ARTICLE I

                                                              BILL
OF RIGHTS

That the general, great and
essential principles of liberty and free government may be recognized and
established, we declare:

. . .

' 16.  Bills of attainder; ex post facto or retroactive laws;  impairing obligation of contracts

 
Sec. 16.  No bill of
attainder, ex post facto law, retroactive law, or any law impairing the
obligation of contracts, shall be made.

. . .

' 29.  Provisions of Bill of Rights excepted from powers of government; to
forever remain inviolate








Sec. 29.  To guard against transgressions of the high
powers herein delegated, we declare that everything in this ABill of Rights@ is excepted out of the general
powers of government,
and shall forever remain inviolate, and all laws contrary thereto, or to the
following provisions, shall be void.

Tex. Const.
Preamble, art. I, '' 16, 29 (emphasis added).








Every constitution of the State of Texas
has contained the language currently found in sections 16 and 29 of the Texas
Bill of Rights.  See Tex. Const. of 1869, art. I, '' 14, 23; Tex. Const. of 1866, art. I, '' 14, 21; Tex. Const. of 1861, art. I, '' 14, 21; Tex. Const. of 1845, art. I, '' 14, 21.  The Constitution of the Republic of Texas
contained substantially similar language. 
See Repub. Tex. Const.
of 1836, Declaration of Rights, Preamble & Sixteenth, reprinted in  Tex.
Const. app. 482, 493B94 (Vernon
1993).  Under the plain meaning of this
text, Aretroactive laws@ shall not be
made, and the people of Texas have not given the Texas Legislature any police
power to enact Aretroactive laws.@  See Tex.
Const. Preamble, art. I, '' 16, 29; Dietz,
940 S.W.2d at 89B90 (stating that article I, section 29 of
the Texas Constitution expressly limits the power of Texas government by
excepting everything in the Bill of Rights out of the general powers of
government and citing with approval Travelers= Ins. Co. v.
Marshall, 76 S.W.2d 1007 (Tex. 1934)); City of Beaumont v. Bouillion,
896 S.W.2d 143, 148B49 (Tex. 1995) (stating that the
guarantees found in the Bill of Rights are excepted from the general powers of
government and that the state has no power to act in a manner contrary to the
Bill of Rights); Travelers= Ins. Co. v.
Marshall, 76 S.W.2d 1007, 1010B11 (Tex. 1934)
(holding that Texas Legislature has no police power to violate article I,
section 16 of the Texas Constitution because section 29 emphatically and
unambiguously excepts this power from the powers of the government of the State
of Texas); Fazekas v. Univ. of Houston, 565 S.W.2d 299, 305 (Tex. Civ.
App.CHouston [1st
Dist.] 1978, writ ref=d n.r.e.) (stating that, although State of
Texas has a broad police power, the Texas Constitution excepts from this power
the authority to enact laws contrary to article I, section 16 of the Texas
Constitution); but see Barshop v. Medina Cty. Underground Water
Conserv. Dist., 925 S.W.2d 618, 633B34 (Tex. 1996)
(stating that a valid exercise of the Legislature=s police power can
prevail over a finding that a law is unconstitutionally retroactive); Texas
State Teachers Ass=n v. State, 711 S.W.2d 421,
424B25 (Tex. App.CAustin 1986, writ
ref=d n.r.e.)
(presuming, despite stated doubts, that teachers= certificates were
vested rights for purpose of retroactivity challenge under article I, section
16 of the Texas Constitution, but stating that such rights are still subject to
the Legislature=s police power, without discussing section
29 of the Texas Constitution=s Bill of Rights);
Martin v. Wholesome
Dairy, Inc., 437
S.W.2d 586, 590B91 (Tex. Civ. App.CAustin 1969, writ ref=d n.r.e.) (indicating that equal
rights and due course of law provisions of Texas Bill of Rights are subject to
the police power without discussing section 29 or the Marshall case).      On many occasions over the past 160
years, the Texas Supreme Court has considered whether a given statute violates
this express constitutional prohibition against retroactive laws, yet the issue
presented today is not easily answered. 
The difficulty arises not because the issue itself is complex but
because Texas jurisprudence is a bit unclear with respect to the proper
analytical framework for evaluating the constitutionality of a statute
challenged under section 16 of the Texas Bill of Rights.  One case from the Texas Supreme Court raises
questions as to the authority of the Legislature to exercise its police power
to enact a Aretroactive law.@








In Barshop, the Texas Supreme Court
stated that even if a statute violates the prohibition against retroactive laws
contained in article I, section 16 of the Texas Constitution, the statute is
not void if it was a valid exercise of the Legislature=s police
power.  See Barshop, 925
S.W.2d at 633B34. 
Barshop, however, does not contain any reference to section 29 of
the Texas Bill of Rights or rest upon any Texas Supreme Court holding to
support this proposition.  See id.
at 633B36.  Texas Supreme Court decisions both before and
after Barshop state that section 29 expressly limits the power of Texas
government by excepting everything in the Bill of Rights out of the general
powers of government.  See Dietz,
940 S.W.2d at 89B90; 
Bouillion, 896 S.W.2d at 148B49;  Marshall, 76 S.W.2d at 1010B11.  In Marshall, the Texas Supreme Court
held that the Texas Legislature has no police power to violate article I,
section 16 of the Texas Constitution because section 29 unambiguously excepts
this power from the powers of the Texas state government.  See Marshall, 76 S.W.2d at 1010B11.  Although the Barshop court, in
conducting its analysis under the Contract Clause of the Texas Constitution,
distinguished Marshall, it did not overrule Marshall.  See Barshop, 925 S.W.2d at 633B35.  Furthermore, since Barshop, the Texas
Supreme Court, addressing this issue, has cited Marshall with
approval.  See Dietz, 940
S.W.2d at 89B90. 
 








In its Contract Clause analysis, the Barshop court
also stated that in an 1851 precedent, State v. Delesdenier, the Texas
Supreme Court concluded that the Contract Clause may yield to statutes
necessary to safeguard the public welfare. 
See Barshop, 925 S.W.2d at 635 (citing State v. Delesdenier,
7 Tex. 76, 99B100 (1851)).  The part of Delesdenier cited by Barshop
is dicta because the court held that the statute in question affected the
remedy and did not infringe on any vested rights.  See Delesdenier, 7 Tex. at 98B101. 
The dicta in Delesdenier cited by Barshop is a recitation
of a federal court=s decision under the Contract Clause of the United States
Constitution.  See U.S. Const. art. I, ' 10 cl. 1 (stating
ANo state shall . .
. pass any . . . Law impairing the Obligation of Contracts@); Delesdenier, 7 Tex. at 99.  In a similar vein, many of the court of
appeals cases cited in Barshop trace their reasoning back to federal
Contract Clause cases.  See, e.g.,
Texas
State Teachers Ass=n, 711 S.W.2d at 424 (relying on and
quoting federal Contract Clause case); see also ante at pp. 11 (quoting
federal Contract Clause case).  As the
Texas Supreme Court pointed out in Marshall, this reasoning is
problematic. See Marshall, 76 S.W.2d at 1010B11.  Though a court applying the Contract Clause
of the United States Constitution may conclude that this clause yields to and
accommodates the police power of a state to safeguard the interests of its
people, this does not mean that the people of Texas are precluded from
withholding certain powers from the Texas government.  And that is just what the people of Texas
have done in section 29.[1]  See Tex.
Const. art. I, ' 29; 
Marshall, 76 S.W.2d at 1010B11 (holding that
federal Contract Clause cases deferring to the police power of the states have
no application to the Texas Constitution because section 29 expressly limits
the police power of Texas government, whereas the United States Constitution
does not expressly limit the police power of the states); see also Andrada v. City of San Antonio, 555 S.W.2d 488, 491 (Tex. Civ. App.CSan Antonio 1977, writ dism=d) (citing in dicta federal Contract
Clause cases, one of which states that Athe interdiction of statutes impairing
the obligation of contracts does not prevent the state from exercising such
powers as are vested in it for the promotion of the common weal, or are
necessary for the general good of the public@) (emphasis added,
citing  Manigault v. Springs, 199
U.S. 473, 480 (1905)).  This court is
bound by our high court=s precedent; however, Barshop is
contradicted by both prior and subsequent Texas Supreme Court precedent.  In this unusual situation, it is better to
follow the weight of controlling precedent. 









Texas courts need a clear legal standard
for determining whether a challenged statute constitutes a Aretroactive law@ that is
impermissible under the Texas Constitution. 
The majority holds that a statute is not an unconstitutional retroactive
law if  the Texas Legislature reasonably
exercised its police power in enacting the statute.  This legal standard seems problematic given
the structure and plain language of the Texas Constitution, which, in clear and
forceful terms, expressly and unequivocally withholds from Texas government the
power to enact retroactive laws.  See
Tex. Const. Preamble, art. I, ' 16 (ANo . . .
retroactive law. . . shall be made.@), ' 29 (A[E]verything in
this >Bill of Rights= is excepted out
of the general powers of government, and shall forever remain inviolate, and
all laws contrary thereto . . . shall be void.@).  Under well-reasoned constitutional theory, a
constitution is a charter of government that derives its whole authority from
the governed.  Dietz, 940 S.W.2d
at 91.  A constitution is a compact
between the government and the people in which the people delegate powers to
the government and in which the powers of the government are prescribed.  Id.  
The Texas Constitution states that the people of Texas have not
delegated to their government the power to enact any Aretroactive law.@  Whatever shortcomings the vested-rights
analysis may have, it is consistent with the structure and plain language of
the Texas Constitution.  Under this
analysis, the Texas Legislature lacks the power to enact statutes that nullify
or destroy vested rights.  See, e.g.,
DeCordova v. City of Galveston, 4 Tex. 470, 473B80 (1849). 








A police-power legal standard may be
consistent with the structure of some other states=
constitutions.  But the constitutions of
these states have language that is very different from the Texas
Constitution.  Consequently, cases
interpreting these states= constitutions provide little, if any,
insight in evaluating the availability and scope of the police power under the
Texas Constitution.  For example, the
majority cites two New Jersey cases in support of its police-power
analysis.  See ante at p. 9; Nobrega
v. Edison Glen Assoc., 772 A.2d 368, 378B82 (N.J. 2001); Phillips
v. Curiale, 608 A.2d 895, 900B02 (N.J. 1992).  Unlike the Texas Constitution, the New Jersey
Constitution contains no explicit prohibition against retroactive civil laws
that do not impair contractual obligations or remedies. N.J. Const. art. IV, sec. VII, par. 3 (AThe Legislature
shall not pass any bill of attainder, ex post facto law, or law impairing the
obligation of contracts, or depriving a party of any remedy for enforcing a
contract which existed when the contract was made.@).  The New Jersey Constitution has no provision
analogous to article I, section 29 of the Texas Constitution.  See 
N.J. Const. arts. I,
IV.  Therefore, unlike the Texas
Legislature, the New Jersey Legislature has the general power to enact retroactive
civil statutes that do not impair contractual obligations or remedies.  See Nobrega, 772 A.2d at 378B82; Phillips,
608 A.2d at 900B02; State Dep=t of Envtl. Prot.
v. Ventron Corp., 468 A.2d 150, 163 (N.J. 1983).  The only general limitation on such statutes
imposed by the New Jersey Constitution is supplied by the substantive due
process protection that New Jersey courts have held is implied in the New
Jersey Constitution.  See N.J. Const. art. I, sec. 1; Nobrega,
772 A.2d at 378B82; 
Phillips, 608 A.2d at 900B02.  The two New Jersey cases cited by the
majority did not use a police-power analysis to determine what constitutes an
impermissible Aretroactive law@ under the New
Jersey Constitution; rather, these cases state that a police-power or
rational-basis analysis is better than the vested-rights analysis for
determining whether a statute is so unreasonable and harsh as to violate the
substantive due process protections implied in the New Jersey
Constitution.  See N.J. Const. art. I, sec. 1; Nobrega,
772 A.2d at 378B82 (stating that, although the
vested-rights analysis had been used to determine whether a retroactive statute
violates implied substantive due process, the better analysis is the
deferential, rational-basis testCwhether the
statute is supported by a legitimate legislative purpose furthered by rational
means); Phillips, 608 A.2d at 900B02 (stating that,
in substantive due process analysis of retroactive statute, New Jersey courts
should balance the importance of the public interest as compared with the value
of the right affected by the statute to determine if the legislature reasonably
exercised its police power or whether it violated substantive due process by
enacting particularly harsh and oppressive legislation).  

In the case at hand, Mrs. Robinson does
not assert a substantive due process violation; 
rather, she asserts that, as applied to her, the Statute violates the
Texas Constitution=s prohibition against enacting any Aretroactive law.@  If the Statute falls within this category,
then the Texas Legislature had no police power to enact it.  Thus, in this context, it makes no sense to
ask whether the Texas Legislature reasonably exercised its police power to
enact a Aretroactive law@ because the Texas
Legislature has no police power to enact such a law at all.

                Precedent
Regarding the Vested-Rights Analysis








Even without considering article I,
section 29, the weight of Texas precedent requires this court to apply the
vested-rights analysis.  In its 1843
term, the Supreme Court of the Republic of Texas used the vested-rights
analysis in applying the protection against retroactive laws contained in the
Constitution of the Republic of Texas.  See
Taylor v. Duncan, Dallam 514, 517 (Tex. 1843).  In 1849, in DeCordova, the Texas
Supreme Court also used the vested-rights analysis in applying this provision
of the Republic of Texas Constitution.  See
DeCordova v. City of Galveston, 4 Tex. 470, 473B80 (1849).  At that time, our high court indicated that a
Aretrospective law@ under the
Republic of Texas Constitution had the same meaning as a Aretroactive law@ under the State
of Texas Constitution.  See id. at
475; see also Tex. Const.
of 1845, art. I, '' 14; Repub.
Tex. Const. of 1836, Declaration of Rights, Sixteenth, reprinted in  Tex.
Const. app. 482, 493B94.  The  DeCordova
court stated that a Aretroactive law@ literally means a
law that acts on things that are past.  See
DeCordova, 4 Tex. at 475.  Observing
that if this term were given its literal meaning, it would have such a broad
reach as to be incapable of practical application, the DeCordova court
held that it is unconstitutional to enact a statute that retroactively destroys
or impairs vested rights, such as an accrued claim or a right to assert that a
claim is barred by the statute of limitations­. 
See id. at 473B80.  The DeCordova court also stated that
statutes modifying the remedy for a claim do not violate the constitution;
however, statutes that take away all remedies for an accrued claim are
unconstitutional.  See id. at 479B80.  








In applying the Texas Constitution=s prohibition
against retroactive laws, the Texas Supreme Court and this court have used the
vested-rights analysis on numerous occasions to determine if a given statute
constitutes a Aretroactive law@ that should be
declared void.  See Subaru of
America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 219B23 (Tex. 2002)
(holding that statute changing tribunal for resolving issues under the Texas
Motor Vehicle Commission Code did not affect any vested rights and was not an
unconstitutional retroactive law); In re A.D., 73 S.W.3d 244, 247B49 (Tex. 2002)
(holding that statute would be an unconstitutional, retroactive law if it
destroyed a vested right by eliminating a matured statute-of-limitations
defense but concluding that statute in question did not do so); Baker
Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d 1, 4B5 (Tex. 1999)
(holding that statute of limitations was unconstitutional retroactive statute
as applied because it destroyed a vested right to assert a matured
statute-of-limitations defense); City of Tyler v. Likes, 962 S.W.2d 489,
502B03 (Tex. 1997)
(citing DeCordova and holding that statute was not an unconstitutional
retroactive law under vested-rights analysis); Middleton v. Texas Power
& Light Co., 185 S.W. 556, 559B61 (Tex. 1916)
(holding that statute was not unconstitutional retroactive law using
vested-rights analysis); Mellinger v. City of Houston, 3 S.W. 249, 251B54 (Tex. 1887)
(holding that, as applied, statute was unconstitutional retroactive law based
on the vested-rights analysis); In re S.C.S., 48 S.W.3d 831, 835 (Tex.
App.CHouston [14th
Dist.] 2001, pet. denied) (holding that amendment to statute was not an
unconstitutional, retroactive law because the statute does not confer any
vested right); Price Pfister, Inc. v. Moore & Kimmey, Inc., 48
S.W.3d 341, 353B55 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (stating that, to establish that a statute is an
unconstitutional, retroactive law a party must show that the statute=s application
would take away or impair vested rights under existing law and holding that
statute did not affect any vested rights of appellant); Zeolla v. Zeolla,
15 S.W.3d 239, 242B43 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied) (stating that although Family Code does not define
statutory term Aretroactive effect,@ this term is
commonly used to describe a law that takes away or impairs vested rights under
existing law); Reames v. Police Officers= Pension Bd., 928 S.W.2d 628,
631 (Tex. App.CHouston [14th Dist.] 1996, no writ)
(stating that an unconstitutional retroactive law is Aone which takes
away or impairs vested rights acquired under existing laws@ and holding that
statute in question did not impair party=s vested rights)
(quotations omitted).  The majority
states that, in the Wright case, the Texas Supreme Court acknowledged
problems with the vested-rights analysis, outlined alternatives to this
analysis, and indicated that the vested-rights analysis should no longer be
used.  See ante at p. 9-10 (citing
Texas Water Rights Comm=n v. Wright, 464 S.W.2d 642,
648B49 (Tex.
1971)).  

In Wright, L. A. Wright, Myrlee
McNary, and George McNary challenged the cancellation of their water
permits.  See Wright, 464
S.W.2d at 644.  The Texas Water Rights
Commission had canceled the permits under a 1957 statute because the permit
owners had not used the permits for ten years. 
See id.  The permit
owners asserted that the statute was unconstitutionally retroactive as applied
to them.  See id. at 644B48.  Before the 1957 statute took effect, a water
permit could be canceled if it had been willfully abandoned for three
consecutive years; however, the law required proof of a subjective intent to
abandon the permit as well as three consecutive years of non-use.  See id. at 644.  The challenged 1957 statute allowed
cancellation of water permits without any proof of subjective intent to abandon
if the owner failed to use the water permit for ten consecutive years.  See id. at 645.  The Texas Supreme Court determined that the
owners had vested rights to the beneficial, non-wasteful use of water but that
they did not have a right to the non-use of water.  See id. at 647B48.  The challenged statute took effect six months
into the ten-year period used to determine that the owners had willfully
abandoned their water rights under the permits. 
See id. at 649.   The Wright
court determined that the owners had no right to an unlimited period of non-use
of water and that the owners had nine and a half years after the effective date
of the statute to use some water under the permits to avoid a finding of
willful abandonment.  See id. at
649B50.  Rejecting the owners= constitutional
challenges, the Wright court held that the 1957 statute=s alteration of
the standard for determining willful abandonment did not constitute an
unconstitutional retroactive law.  See
id.  








As to the legal standard used in Wright,
the Texas Supreme Court cited various cases regarding the vested-rights
analysis; it did not discuss the police-power legal standard or any other
possible alternatives to the vested-rights legal standard.  See id. at 649B50.   The Wright court did not indicate that
the vested-rights analysis should be discarded; rather, it used the
vested-rights analysis to uphold the challenged statute, citing the DeCordova
case in determining that nine and a half years was a reasonable period for the
owners to have a chance to use their permits to avoid a finding of willful
abandonment.  See id. at 649
(citing DeCordova, 4 Tex. at 480). 
There is one paragraph in the Wright opinion in which the court
cites four law review articles and notes that some legal scholars have tried to
discover the underlying rationale for what makes a statute unconstitutionally
retroactive.  See id. at 649.  Though the Texas Supreme Court recognized
that efforts to catalogue cases have provided some assistance and also shown
some confusion in the decisions, our high court did not suggest abandonment of
the vested-rights analysis nor did it propose any other legal standard as a
substitute.  See id. at 648B50.  The Wright case does not support a
change from the well-established vested-rights analysis to a new police-power
analysis.  













The majority also relies on the Texas
Supreme Court=s opinion in Barshop.  See ante at p. 11.  In Barshop, our high court rejected
various constitutional claims that the Edwards Aquifer Act was unconstitutional
on its face, holding that the plaintiffs failed to establish that this statute,
by its terms, always operates to unconstitutionally deprive them of their
property rights in underground water.  See
Barshop, 925 S.W.2d at 627, 638.  The
Barshop plaintiffs asserted, among other things, that the challenged
statute was an unconstitutional retroactive law under the Texas
Constitution.  See id. at 633B34.  The Barshop court began by recognizing
that retroactive laws that impair vested rights violate the Texas
Constitution.  See id. at
633.  Although the State asserted that
the plaintiffs did not have vested rights in the water in question, the Barshop
court did not address this argument.  See
id. at 625,  633B34.  Instead, the court applied a police-power
analysis, stating that A[a] valid exercise of the police power by
the Legislature to safeguard the public safety and welfare can prevail over a
finding that a law is unconstitutionally retroactive.@  See id. at 633B34.  The only authorities cited by the Barshop
court for this proposition are five court of appeals opinions and one Texas
Supreme Court opinion.  See id.  Except for the Texas State Teachers Ass=n case, the parts of
these opinions cited by Barshop are obiter dicta.  See Texas State Bd. of Barber Exam=rs v. Beaumont
Barber Coll., Inc., 454 S.W.2d 729, 732 (Tex. 1970) (stating, after
concluding that barber college had no vested right to operate with less
floorspace and equipment than required by new statute, that barber college=s right was to be
protected from legislation that constitutes an unreasonable exercise of the
police power); Texas State Teachers Ass=n v. State, 711 S.W.2d 421,
424B25 (Tex. App.CAustin 1986, writ
ref=d n.r.e.)
(presuming, despite expressed doubts, that teachers= certificates in
question were vested rights and holding that constitutional prohibition against
retroactive laws must yield to the state=s right to
safeguard the public welfare through valid exercise of its police power, citing
Kilpatrick and Wichita Engineering); Ismail v. Ismail, 702
S.W.2d 216, 222 (Tex. App.CHouston [1st
Dist.] 1985, writ ref=d n.r.e.) (stating that an overriding
public interest justifies application of statute to property acquired before
the enactment, but concluding that court was bound by prior Texas Supreme Court
case, which held that legal principle contained in statute was the law in Texas
even before the statute took effect); Kilpatrick v. State Bd. of
Registration for Prof=l Eng=rs, 610 S.W.2d 867,
870B71  (Tex. Civ. App.CFort Worth 1980,
writ ref=d n.r.e.) (holding
appellants had no vested rights that would be protected from retroactive laws
but also citing Wichita Engineering for the statement that the
constitutional protections against retroactive laws are not absolute and must
yield to the state=s right to safeguard public welfare); State
Bd. of Registration for Prof=l Eng=rs v. Wichita Eng=g Co., 504 S.W.2d 606,
608B09  (Tex. Civ. App.CFort Worth 1973,
writ ref=d n.r.e.) (stating
that corporation had no vested right in using Aengineering@ in its name based
on statute that was in effect when it was incorporated but stating that the
constitutional protections against retroactive laws are not absolute and must
yield to the state=s right to safeguard public welfare); Caruthers
v. Bd. of Adjustment of City of Bunker Hill Village, 290 S.W.2d 340, 345B50 (Tex. Civ. App.CGalveston 1956, no
writ) (concluding property owners had no vested right to compel recognition of
their planned subdivision in case in which parties did not assert an article I,
section 16 violation, but stating that all property rights are subordinate to
the valid and reasonable use of the police power).  Nonetheless, the Barshop court stated
that it agreed with the reasoning of these cases. The Barshop court did
not reach the issue of whether the plaintiffs had vested rights, and it
rejected the retroactivity challenge because it concluded that the Edwards
Aquifer Act was Anecessary to safeguard the public welfare
of the citizens of this state.@  Barshop, 925 S.W.2d at 634.  








The Barshop opinion supports the
majority=s application of a
police-power analysis rather than the vested-rights analysis.  But neither Barshop nor the cases
cited therein mention or discuss section 29 of the Texas Bill of Rights.  See 
Tex. Const. art. I, ' 29.  Under the plain meaning of this
constitutional provision, the people of Texas have not given the Texas
government the police power to enact any Aretroactive law.@ See Tex. Const. Preamble, art. I, '' 16, 29; Dietz,
940 S.W.2d at 89B90; Bouillion, 896 S.W.2d at 148B49; Marshall,
76 S.W.2d at 1010B11; Fazekas, 565 S.W.2d at
305.  Although Barshop supports a
police-power analysis, it does not mention or overrule prior Texas Supreme
Court authority that uses the vested-rights analysis.  See, e.g., Wright, 464 S.W.2d 6 at 648B50;  Middleton, 185 S.W. at 559B61; Mellinger,
3 S.W. at 251B54. 
Since Barshop was decided nearly a decade ago, the Texas Supreme
Court and this court have used the vested-rights analysis without mentioning or
discussing Barshop.  See, e.g.,
Subaru of America, Inc., 84 S.W.3d at 219B23; In re A.D.,
73 S.W.3d at 247B49; Baker Hughes, Inc., 12 S.W.3d
at 4B5; Likes,
962 S.W.2d at 502B03; In re S.C.S., 48 S.W.3d at 835;
Price Pfister, Inc., 48 S.W.3d at 353B55; Reames,
928 S.W.2d at 631.  Research indicates
that Barshop is the only Texas Supreme Court case holding that a
police-power type of analysis is appropriate for evaluating a claim that a
statute violates the Texas Constitution=s prohibition
against retroactive laws. As an intermediate court of appeals, this court is
bound by Texas Supreme Court precedent; however, Barshop is contradicted
by several other Texas Supreme Court precedents existing when Barshop
was decided and by several such precedents decided after Barshop.[2]  In this difficult position in which this
court cannot possibly follow both Barshop and the other Texas Supreme
Court precedents, the better course would be to follow the other
precedents.  Not only does the weight of
authority rest in these cases, but these opinions discuss the issue in light of
section 29 of the Texas Bill of Rights. 
Therefore, this court should apply the vested-rights analysis rather
than a police-power analysis.

                                      The Vested-Rights Analysis








Both the Texas Supreme Court and this
court have concluded that an accrued cause of action is a vested right.  See Likes, 962 S.W.2d at 502; Mellinger,
3 S.W. at 253 (AWhen . . . a state of facts exists as the
law declares shall entitle a plaintiff relief in a court of justice on a claim
which he makes against another . . . , then it must be said that a right exists
[and] has become fixed or vested . . . .@); Price
Pfister, Inc., 48 S.W.3d at 354 (determining that, for purposes of
retroactivity analysis under Texas Constitution, company had a vested right
when its contract claim accrued); but see Walls v. First State Bank of Miami,
900 S.W.2d 117, 122 (Tex. App.CAmarillo 1995,
writ denied) (stating that right does not become vested until claim is reduced
to a final, nonreviewable judgment); Houston Indep. Sch. Dist. v. Houston
Chronicle Pub. Co., 798 S.W.2d 580, 589 (Tex. App.CHouston [1st
Dist.] 1990, writ denied) (indicating that right is not vested until lawsuit is
filed and finally determined).  This
logic is also supported by the various cases holding that a right to a
limitations defense becomes vested when the claim becomes barred by
limitations, rather than when the party obtains a judgment to this effect that
is final by appeal.  See, e.g., Baker
Hughes, Inc., 12 S.W.3d at 4 (stating that it is well settled that a
statute may not retroactively destroy a party=s right to a
limitations defense, which becomes vested after the claim is barred by
limitations).  Though some courts of
appeals have stated that an accrued claim is not vested until it is reduced to
a judgment final by appeal, these holdings are contrary to precedents binding
on this court.  See Likes, 962
S.W.2d at 502; Mellinger, 3 S.W. at 253; Price Pfister, Inc., 48
S.W.3d at 354. Moreover, these holdings are not logically sound.  If a judgment final by appeal is necessary,
then parties whose claims accrued on the same day would have their entitlement
to constitutional protection from retroactive statutes determined based in part
on how expeditious the trial and appellate process happened to be in their
particular lawsuits.  That would not be
reasonable.








Because Mrs. Robinson=s claims accrued
and were pending in the trial court when the Statute took effect, Mrs. Robinson
held vested rights in these claims that could not be destroyed.[3]  See Likes, 962 S.W.2d at 502; Mellinger,
3 S.W. at 253; Price Pfister, Inc., 48 S.W.3d at 354.  Crown Cork & Seal asserts that the
Statute does not bar all of Mrs. Robinson=s remedy for the
claimed injuries because she can sue other companies not protected by the
Statute. This argument lacks merit because Mrs. Robinson claims that the
Statute retroactively destroyed her vested rights in her claims against Crown
Cork & Seal, rather than any vested rights she might have to sue other
entities.  Crown Cork & Seal has
cited no cases supporting the notion that the Texas Constitution permits a
statute to retroactively destroy a vested right in an accrued claim if other
parties may be liable on other claims seeking damages for the same injury.  This argument lacks merit.[4]

          In Ieropoli v. AC&S Corp.,
the Pennsylvania Supreme Court addressed the constitutionality of  a Pennsylvania statute limiting the successor
asbestos-related liabilities of certain companies that, as applied, would have
retroactively destroyed accrued tort claims against Crown Cork & Seal.  See 842 A.2d 919, 932 (Penn.
2004).  Although Ieropoli involved
the open courts provision of the Pennsylvania Constitution and a somewhat
different Pennsylvania statute, the case has some persuasive value in
evaluating the constitutional issue in the instant case.  See 842 A.2d 919, 932 (Penn.
2004).  In Ieropoli, Pennsylvania=s high court held
that the Pennsylvania statute, as applied, offended the Pennsylvania
Constitution.  See id. at 929B32.  Reversing and remanding the lower court, the
Pennsylvania Supreme Court found that the Pennsylvania statute violated the
open courts provision of the Pennsylvania Constitution by  destroying all remedy for an accrued cause of
action.  See id. at 932.  The Ieropoli court held that an
accrued claim is a vested right that cannot be eliminated by subsequent
legislation. See id. at 927, p32. 
In explaining why the statute violated the remedies clause of the
Pennsylvania Constitution, the Ieropoli court stated:








Before the Statute=s enactment, each
cause of action that [plaintiffs] brought against Crown Cork was a remedyCit was the vehicle
by which [plaintiffs] lawfully pursued redress, in the form of damages, from
Crown Cork for an alleged legal injury. 
But under the Statute, [plaintiffs] cannot obligate Crown Cork to pay
them damages on those causes of action. 
In this way, each cause of action has been stripped of its remedial
significance, as it can no longer function as the means by which [plaintiffs]
may secure redress from Crown Cork.  As a
remedy, each cause of action has been in essence, extinguished.  Under [the open courts provision of the
Pennsylvania Constitution], however, a statute may not extinguish a cause of
action that has accrued.  Therefore, as
[plaintiffs=] causes of action accrued before the
Statute was enacted, we hold that the Statute=s application to
[plaintiffs=] causes of action is unconstitutional 

Id. at 930.  The Pennsylvania Supreme Court rejected the
argument  that because the plaintiffs
could recover from other potential defendants, no cause of action had been
extinguished.  The court=s logic in
rejecting this point is persuasive:

What this reasoning overlooks is
the individual nature of a cause of action. 
A plaintiff does not assert one cause of action against multiple
defendants.  Rather, a plaintiff asserts
one cause of action (or two or several causes of action) against a single
defendant . . .  Thus, the fact that the
causes of action [plaintiffs] brought against Crown Cork=s co-defendants are proceeding has
no bearing on the Statute=s unconstitutional effect on the
accrued casues of action that [plaintiffs] brought against it. 

Id. 
Although the Pennsylvania Constitution is different from the Texas
Constitution, both states use the vested-rights analysis and both constitutions
prohibit statutes that retroactively eliminate accrued claims; therefore, the
majority=s distinctions
between the Ieropoli decision and this case are not convincing.  The majority states that Athe most important
differences appear in the statutes themselves,@ noting that the
Pennsylvania statute was not as narrowly drawn as the Texas statute, was not
crafted to encompass Aonly the most innocent successor
corporations,@ and did not impose the requirement that a
corporation must have purchased the asbestos division before May 13, 1968, and
must not have manufactured asbestos itself. 
Ante at p. 19.  But, if the
enactment of the Statute violates a constitutional prohibition on retroactive
laws, these points are not relevant to the analysis. 








In sum, by enacting this expressly
retroactive statute, our Legislature created a new substantive defense to
successor liability and made it immediately effective in all pending cases,
destroying Mrs. Robinson=s vested rights in her accrued tort claims
against Crown Cork & Seal.  The
Statute, as applied to Mrs. Robinson, is unconstitutional because it violates
the Texas Bill of Rights=s prohibition against retroactive
laws.  

                                                     Conclusion

Based on the
structure and plain language of the Texas Constitution as well as the weight of
binding precedent, this court should utilize the vested-rights analysis to
determine whether the Statute is an unconstitutional retroactive law as applied
to Mrs. Robinson=s claims against Crown Cork &
Seal.  This analysis compels the conclusion that, as applied
to her, the Statute retroactively destroys Mrs. Robinson=s vested rights in accrued tort claims
against Crown Cork & Seal. 
Therefore, to this extent, the Statute violates article I, section 16 of
the Texas Constitution. 

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed May 4, 2006.

Panel consists of
Chief Justice Hedges and Justices Fowler and Frost.  (Fowler, J., majority)           











[1]  In its
Contract Clause analysis, the Barshop court also cites dicta from two
courts of appeals.  See Texas Water
Comm=n v. City of Fort Worth, 875 S.W.2d 332, 335B36 (Tex.
App.CAustin 1994, pet. denied) (citing Kilpatrick in
dicta and stating that contract clause of Texas Constitution is subject to the
police power but holding the statute in question does not impair contractual
obligations); Andrada v. City of San Antonio, 555 S.W.2d 488, 491 (Tex.
Civ. App.CSan Antonio 1977, writ dism=d) (citing federal Contract Clause cases regarding
police power in case in which the statute did not apply retroactively or impair
existing contractual obligations).





[2]  The majority
also cites other cases that are not persuasive or not on point as to this
issue.  See Lebohm v. v. City of
Galveston, 275 S.W.2d 951, 954B55 (Tex.
1955) (stating in dictum in case involving only a successful open courts
challenge that legislature may withdraw common law remedy if it is a reasonable
exercise of the police power); City of Coleman v. Rhone, 222 S.W.2d 646,
648 (Tex. Civ. App.CEastland 1949, writ ref=d)
(stating that the police power is broad in case that did not involve an alleged
violation of the Texas Bill of Rights but only an assertion that a statute was
not a reasonable exercise of the police power); City of Breckenridge v.
Cozart, 478 S.W.2d 162, 165 (Tex. Civ. App.CEastland
1972 writ ref=d n.r.e.) (holding that shutting off of person=s water services did not constitute a taking of
property without due process of law and stating that statute authorizing such
action was a valid exercise of the police power); Martin v. Wholesome Dairy,
Inc., 437 S.W.2d 586, 590B91 (Tex. Civ. App.CAustin
1969, writ ref=d n.r.e.) (discussing the police power in case
involving alleged violations of Equal Rights and Due Course of Law  provisions). 






[3]  Furthermore,
there is no merit in Crown Cork & Seal=s
argument that Mrs. Robinson=s claims are statutory claims in which she has no
vested rights under Dickson v. Navarro County Levee Improv. Dist. No.3,
139 S.W.2d 257, 259 (Tex. 1940) and Aetna Ins. Co. v. Richardelle, 528
S.W.2d 280, 284 (Tex. Civ. App.CCorpus Christi 1975, writ ref=d n.r.e.). 
Likewise, there is no merit in Crown Cork & Seal=s assertion that the Statute is a change in the
conflict-of-laws rules, in which Mrs. Robinson has no vested right.  





[4]  In addition, although the majority
stresses the asbestos litigation crisis, the Texas Supreme Court has held that
emergency conditions do not allow the Texas Legislature to constitutionally
enact a statute that destroys vested rights. 
See Marshall, 76 S.W.2d at 1011.